## AETNA CASUALTY & SURETY CO. v. RHINE.

### No. 11450.

Circuit Court of Appeals, Fifth Circuit.

Dec. 10, 1945.

John T. Gano and John T. Pearson, both of Fort Worth, Tex., for appellant.

H. G. Woodruff, of Decatur, Tex., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant is the insurance carrier for Consolidated Vultee Aircraft Corporation as respects liability for compensation to employees for industrial accidents under the laws of Texas. Appellee Rhine was an employee of Consolidated in its airplane factory at Fort Worth who in the course of his employment received an injury by crushing of his left shoulder, arm and side by the fall upon him of a heavy table on July 6, 1943. The Industrial Accident Board denied his claim for compensation which was filed with it on March 21, 1944. On a trial before a jury in the District Court the jury, on March 30, 1945, rendered this verdict: "We the jury find for the plaintiff and that he is totally and permanently incapacitated, and do recommend a lump sum settlement." A judgment was entered thereon for a lump sum, intended to be according to the statute in such cases, for $6490.85. This appeal followed. Three errors are specified: 1. The overruling of a motion for instructed verdict, and for judgment non obstante veredicto, because the evidence did not warrant a finding that the incapacity sustained was due to the accident, but demanded one that it was due to Hodgkin's disease and not compensable; 2. There was no evidence to show that the delay beyond six months in filing the claim was excusable for the reasons pleaded, nor for any good cause; 3. Rhine continued to work and was paid therefor until Feb. 1, 1944, and a judgment for 401 weeks of total and permanent incapacity from the date of the accident, or for any lump sum, was not warranted by the statute.

1. The evidence established clearly that on July 6, 1943, while at work Rhine's left shoulder and arm were severely mashed by

the fall of the table on him, that his foreman sent him for first aid to the employer's medical dispensary where he was given treatment, returning for treatment for several days, but continuing to suffer so that he sought a physician of his own choosing. He continued on his job as a blueprint man and pattern maker, but being left-handed could not do his work well, and at most only light work, suffering much pain, as he testified, and complaining of it as his foreman and fellow workers testified. His arm then became numb, and the grip of his hand weak, with periods of sharp pain. He changed his physician and was treated differently, but got worse. On Feb. 1, 1944, he quit work and went to a hospital. About Feb. 15 an operation of an exploratory nature was performed on the top of his left shoulder to remove an enlarged gland. On a laboratory test this tissue was found to be affected with malignancy, and Hodgkin's disease was suspected. This is an obscure and comparatively rare disease of the lymphatic system, its cause unknown, and no cure found. X-ray treatments are testified to be beneficial sometimes. Cutting out affected glands may give temporary relief, but part of the medical testimony is that this aggravates rather than relieves the progress of the disease. Death comes usually in from one to three years, but according to some of the evidence it may be delayed a greater number of years. The doctors all agreed that it is not known that trauma has anything to do with it. The rather skimpy evidence as to its symptoms and external effects is that there is only a low grade feverish state, no pain, usually it shows up in the enlargement of the glands, tending to attack them all, the lymphatics being first affected and their enlargement being observable to the layman. Pain results only if the enlarged glands press on some nerve.

Rhine, about two weeks after the operation, was discharged from the hospital and given some X-ray treatments. He got a lawyer and filed claim on March 21. He moved from Fort Worth about Aug. 1, to Decatur, and put himself under the treatment of Dr. Rogers, and was in his care at the time of trial in March, 1945. Dr. Rogers testified that Rhine had no symptom or appearance of Hodgkin's disease, that the pain and numbness and weakness of hand and arm were in his opinion due to injury to the nerve supplying these which passes over the shoulder. He testified that injured

nerve tissue is never regenerated, that if the function of the nerve is curtailed or destroyed it affects the use and blood supply of the muscles which the nerve serves, causing their atrophy. He had Rhine to remove his shirt and pointed out to the jury the atrophy to which he was testifying, and that there were no enlarged lymphatic glands. He was positive in his opinion that a crushing of the nerve and not Hodgkin's disease was the cause of the disability of Rhine. All of the doctors save one agreed that since Feb. 1st it was total. Dr. McKean, who examined Rhine for appellant, thought he had Hodgkin's disease, but said: "I could find nothing to account for the alleged trouble about the hand, fore-arm, or arm. * * * I could find nothing to account for the alleged loss of gripping power or numbness in his hand or inability to use this arm." He admitted some atrophy and nerve disturbance as to some small muscles in the shoulder. He went so far as to say that he thought nothing was the matter with Rhine's left arm and hand and that he could go back to work. He said he found no evidence of Hodgkin's disease in his examination, and based his opinion that Rhine had it on the previous medical record shown him.

We think it a jury question whether Rhine had Hodgkin's disease, or not. But irrespective of that, his testimony is positive that he could not work because of pain, and numbness and weakness in his work-arm and hand. No one testifies that these are symptoms or results of Hodgkin's disease; or that they would not result from the crushing of a nerve supplying those members. The jury could reasonably follow the testimony of Dr. Rogers. Whether a total incapacity resulted from the physical injury in the course of employment was for their decision, as well as the permanency of it.

2. The Texas statute, Vernon's Ann.Civ.St. Art. 8307, Sec. 4a, requires that unless the employer has notice of the injury notice must be given within thirty days thereof, and a claim filed with the Industrial Accident Board within six months, but "for good cause the board may, in meritorious cases, waive strict compliance with the foregoing limitations." The employer here had immediate notice and no question is raised about due notice. The six months for filing claim expired Jan. 6, 1944. Prior to that date there was no diligence due to file claim if the injured party wished to

delay. On that date and afterwards, to escape the limitation which has been declared to be jurisdictional, Johnson v. Employers Liability Ins. Ass'n, 131 Tex. 357, 112 S.W. 2d 449, good cause for the delay must be shown. What is good 'cause for delay has been considered in many cases. An authoritative decision on facts similar to those here involved is found in Texas Employers Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80, where the employee, though receiving a violent injury, was able to keep at work, and believed it would not prove serious. He was struck in the head by a pipe, making a gash that had to be sewed up. He returned to work after three days, but his eye swelled so he could not see. After two more days he went back to work and continued till he was laid off nearly a year after the injury. He had suffered almost constantly from pains in his head, but believed he would recover. About two years after injury he was found to have a seriously infected sinus, and to be disabled, and a claim was then filed. The opinion, adopted by the Supreme Court, quotes as a correct rule that given in Texas Employers Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405: "That the employee did not believe his injuries to be serious would clearly afford a good cause for not giving notice and filing claim until it was learned that they were serious. Compensation is not provided for pain and suffering, but for loss of wages, and there would arise no necessity for giving notice or filing a claim so long as the employee lost no time from his work, but believed his injuries were trivial." [135 Tex. 123, 139 S.W.2d 82.] The opinion further states that there was evidence justifying a fair inference that until the claim was filed "the plaintiff believed and was reasonably justified in believing that his injury was not serious and would not disable him." It was further held that the question whether good cause exists for not filing is generally a question of fact. We understand that the word "trivial" was used as the equivalent of "not serious and would not disable"; and that so long as the employee is able to work without much interruption, and is reasonably justified in believing his injury is not serious and will not disable him, he need not file a claim. In the present case the employee, though violently injured and suffering much pain, was able to stay on his job and was fully paid up to Feb. 1. From his testimony and the medical advice he says he had, the jury could conclude that he thought and reasonably could think as a prudent man that his injury was not serious and likely to disable him.

On that date he went to a hospital, and quit work. He delayed to file claim till March 21. The case after Feb. 1 is to be tested by a more general rule often stated that he must act as an ordinarily prudent man would as respects filing a claim. American General Ins. Co. v. Amerson, Tex.Civ.App., 187 S.W.2d 912. The hospital examination lasted for several days, and on Feb. 15 culminated in the exploratory operation above mentioned, which led the doctors who participated to conclude that he had Hodgkin's disease. But there is no evidence that they so told him then, and he denies it. He remained in the hospital till about March 1, and went under the treatment of a specialist, still as he testified without any advice that he was incurably affected. On March 21 the claim was filed. This delay after the discharge from the hospital Rhine explains as in part due to a Mr. Ray calling on him three or four days after he reached home and saying: "I would be getting compensation checks right along, and he would see me later". There is no formal proof that Ray represented the appellant, but Rhine understood he did, and he is several times so spoken of in the questions of the lawyers, without objection or denial, and both Rhine and Dr. McKean testify that Ray sent Rhine to Dr. McKean for examination on Nov. 13, 1944, and Dr. McKean says Ray was then representing the Aetna Casualty Insurance Company. The jury could conclude that Ray in fact spoke for appellant in early March in assuring Rhine that he would be getting disability checks; and that it was reasonably prudent for Rhine to wait a few weeks for them. The objection that the facts we have discussed were not precisely pleaded as the good cause for delay cannot prevail. The evidence was received without any such objection. It could have been met by amendment. Both under the Rule of Civil Procedure, 15(b), 28 U.S.C.A. following section 723c and under Texas practice, American General Ins. Co. v. Amerson, Tex.Civ.App., 187 S.W.2d 912, 915, the evidence rather than the pleading will be regarded.

3. It is urged that according to Texas Employers Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900, in a case where total permanent incapacity is found the compensation is for 401 weeks, but computed from the date of injury, and not from

the date of such incapacity. We accept that as the law. It is then said that the evidence is uncontradicted that Rhine worked and was paid until Feb. 1, 1944, and cannot claim compensation for the intervening weeks for which he was paid his full wages. This also seems good justice. Appellee thereupon offers to write off from the judgment the compensation for these intervening weeks, so as to make the judgment for $6176.23 principal. Appellant does not dispute the correctness of these figures. Appellant, however, argues that the existence of total permanent disability from the date of injury July 6, 1943, is necessarily inconsistent with the existence of the cause set up for not filing claim in due time, because a man in his senses cannot be totally disabled and not know it. American General Ins. Co. v. Amerson, Tex.Civ.App., 187 S.W.2d 912, 916 is cited. That case was dealing with the evidence as such, and not with the rule of law fixing the limit of time for which total permanent disability compensation may be allowed. There is in the present case no inconsistency in the pleading, evidence or verdict on this point. The petition states Rhine worked and was paid till Feb. 1, and that he was in fact not totally disabled till Feb. 5, and he did not before then believe he was seriously disabled at all, and gives this belief as one reason why claim was not filed. The evidence agrees. The verdict finds that Rhine "is totally and permanently incapacitated", fixing no time. It is the statute which steps in and says arbitrarily that the period of 401 weeks for which it provides compensation shall date from the injury. There is nothing contradictory or illegal about the verdict.

It is lastly argued that if the judgment is to be reduced below 401 weeks compensation, the statute does not authorize a lump sum. We do not so understand the lump sum provision, Vernon's Ann.Civ.St. Art. 8306, Sec. 15. It allows it, "In cases where death or total permanent incapacity results from an injury", and excludes all other cases. But it says nothing about 401 weeks. We think a lump sum is authorized to be fixed in a case where total permanent incapacity has resulted, notwithstanding for some sufficient reason the full 401 weeks cannot be included in the compensation award. It is ordered that the judgment be reduced to a principal amount of $6176.23, and that thereupon it be

Affirmed.