## NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY,

v.

### L. E. SHAWVER.

### No. 15415.

United States Court of Appeals
Fifth Circuit.

June 2, 1955.

Rehearing Denied June 28, 1955.

Mark Martin, Hobert Price, Dallas, Tex., for appellant.

C. Coit Mock, Mock & Kee, Wichita Falls, Tex., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The single question involved in this appeal is whether an employee, suing to recover Workmen's Compensation Insurance, who did not give notice of his injury within thirty days after its date, is barred from recovery as a matter of law by reason of the claimed absence of evidence showing good cause for such failure to give the statutory notice. Appellee, Shawver, filed this action against Appellant, National Automobile and Casualty Insurance Company, insurance carrier of W. R. Bumpus Construction Company, employer of Shawver, alleging that he had been injured during his employment and was entitled to recover for total disability. Appellant defended on the ground that the Texas statute requiring notice of injury to be given within thirty days of its happening had not been complied with.

Appellant made seasonable motions in the court below for a directed verdict and for a new trial based upon the ground, among others, that Appellee had failed to show good cause for his failure to give the statutory thirty days notice of his injury. These motions were overruled by the court below, and the question of good cause was submitted to the jury, which returned a verdict in favor of Appellee upon which judgment was duly entered. The sole error assigned and argued here is based upon the claim that there was no evidence of good cause for the admitted delay upon which the jury could have based its verdict for Appellee.

Appellee, an experienced bulldozer operator, was injured on or about October 16, 1953, while he was operating a bulldozer for his employer, whose insurance Appellant carried. He was seeking to dislodge and move some heavy rocks and the operation was accompanied by unusual jerks and jars. During the performance of this work, Appellee experienced sharp pain in his back which necessitated his stopping work for a while and resting. No representative of his employer was present, and Appellee made no report to any representative of his employer or of Appellant until January 25, 1954, more than three months after the injury was sustained.

Appellee continued to work the remainder of the day of his injury and for about three days more, when this job was completed and he was laid off from work. Appellee went to the hospital the night of his injury and consulted his family physician, who gave him some medicine. He had complained of sharp pains when he arrived from work on the day of the injury, and his wife had accompanied him to see the doctor. He consulted with the doctor several times between then and the time he employed lawyers and filed his claim January 25, 1954. On November 25, 1953 the family physician had made X-ray pictures. During the interval between the time of injury and the time of report, Appellee made no effort to obtain employment because of the pain he was suffering rather constantly, but he did work around home consisting of driving the pick-up truck, milking the family cow, and assisting in such house work as washing dishes and clothes. He tried to drive his farm tractor several times, but found that, after about an hour, he would have to discontinue this work because of the pain incidental to it. He rented a farm and raised a crop of spring wheat, but hired a combine to harvest it.

When asked directly why he did not report his accident to his employer before January 25th he replied, "Well, I thought I would get all right, I figured I jerked a kink in my back and I was just going to try to get well without it".

Both appellee and his wife testified categorically that the doctor had never indicated to them that the injury was serious or likely to prove permanent until three days before Appellee employed his lawyer and filed his claim. The fam-

ily doctor tended to sustain that claim although, upon strenuous cross-examination, he admitted that the condition of Appellee had not changed materially during the intervening three months.

Appellee was subjected to skilful cross-examination, and his story was not shaken. He knew he was injured and disabled, but he remained hopeful all along that the injury was merely a strained muscle and that in time he would entirely recover. His wife corroborated Appellee's story.

If the story told by Appellee and his wife is to be accepted, good cause did exist for Appellee's failure to report his injury and file a claim. The court below and the jury which tried the case evidently did accept what Appellee and his wife said as the truth. The jury saw these people testify and were doubtless impressed, as one reading the printed record is impressed, with their sincerity and apparent honesty. It is likely also that the jury considered that, when Appellee admitted that he had failed to report his injury, he was testifying against his own interest; and also that the jury approved rather than condemned the disposition displayed by Appellee to fight his own battles and to delay, as long as might be, calling upon others for assistance.

Appellant urges earnestly that Appellee and his wife were contradicted by the family physician. We have read and reread the testimony of these three, and we do not find any serious conflict. The family doctor did not take a case history and did not make any effort to keep complete records. In every instance where his testimony varied from that of Appellee, he always qualified his statements by pointing out that what he was saying was true as far as his records went. The conflict between them, such as it was, was certainly not such as to require that the testimony of the doctor be accepted and that of Appellee and his wife be rejected. The jury evidently thought that the testimony of Appellee was more convincing in those minor details than that of the physician, and the jury had a perfect right to do that.

The legal principles guiding the jury in its deliberations are not complex. The Texas statute[1] requires that, as a condition precedent to recovery, an injured person shall give notice of his injury within thirty days after the happening thereof. The rigor of that requirement is tempered, however, by the last sentence of the section, which provides, "For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, * * *."

In this case, the jury is charged with the same responsibility of deciding whether, under its facts, the case is meritorious and good cause has been shown.

Many decisions of Texas courts are called to our attention, most of them being from the various Courts of Civil Appeals. Those cases are interesting, but the principles here involved have been settled by the court of last resort in Texas, Hawkins v. Safety Casualty Co.[2] No good purpose will be served by detailing the facts of that case because every case must be decided upon its own individual facts. The circumstances there involved were not unlike those before the court here, and the Supreme Court reversed the action of the trial court and the Court of Civil Appeals, in rejecting a claim which had not been reported for eight months. The Texas Supreme Court reviewed a large number of cases from the Courts of Civil Appeals and concluded that, "it appears conclusively that in each of them there is a total absence of diligence in the prosecution of the claim." The standards by which the proof in such cases is to be judged is thus stated by the Supreme Court of Texas: "The term 'good cause' for not filing a claim for compensation is

1. Vernon's Texas Civil Statutes, Art. 8307, Sec. 4a.

2. 1948, 146 Tex. 381, 207 S.W.2d 370, 372.

not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion."

That seems to be the last word of the Supreme Court of Texas on the subject, and our attention is called to only one case from the Court of Civil Appeals decided since the Hawkins case.[3] That case involved a delay of two years four and one-half months in filing the claim, during which time the injured man "was unable to straighten up, but had to walk stooped over at a forty-five degree angle." It is not necessary to weigh the force of that decision against the last one from the Supreme Court of Texas because the facts are manifestly different from those with which we are dealing.

We have been called upon to consider and decide what is "good cause" under the Texas statute above quoted[4] and, in each instance, good cause was held to have been shown when the facts were no stronger in favor of the injured man delaying to give notice, than they are in the present case. Those decisions were rendered before the Supreme Court of Texas decided the Hawkins case.[5] The tone of the Hawkins case indicates that the Texas Court is disposed to deal with such cases with more liberality to the injured man even than we had displayed in the cases cited.

For the reasons stated, we are unable to hold that Appellee was barred from recovery as a matter of law because of his admitted delay in giving notice of his injury. On the other hand, we feel that the question is one of fact, that it was properly submitted to the jury and that the jury was amply sustained in finding a verdict for the Appellee. The judgment is, therefore.

Affirmed.

3. Copinjon v. Aetna Casualty & Surety Co., Tex.Civ.App. San Antonio, 1951, 242 S.W.2d 219, 220.

4. Aetna Casualty & Surety Co. v. Rhine,

5 Cir., 1945, 152 F.2d 368, and Hathaway v. New York Casualty Co., 5 Cir., 1945, 152 F.2d 684.

5. Note 2 supra.