## FEDERAL UNDERWRITERS EXCHANGE v. McDANIEL.

### No. 3633.

Court of Civil Appeals of Texas. Beaumont.

April 12, 1940.

Rehearing Denied May 4, 1940.

Gordon, Sharfstein, Bell & Weinert, of Beaumont, for appellant.

K. W. Stephenson, of Orange, for appellee.

WALKER, Chief Justice.

This is a compensation case, with appellee, I. M. McDaniel, the employee, and Federal Underwriters Exchange the compensation insurance carrier. On the 28th day of August, 1939, on the verdict of the jury finding the essential facts, judgment was rendered in appellee's favor against appellant for the sum of $4,441.57, to be paid in a lump sum, with interest at the rate of 6% per annum from date of the judgment, from which appellant has duly prosecuted its appeal to this court. No assignment is presented against the suffi-

ciency of the evidence to support the findings of the jury on the issues of total, permanent incapacity, and of the lump sum settlement. Appellant's principal attack is directed against the findings of the jury on the issue of "good cause" for the delay in filing his claim with the Industrial Accident Board from May 30, 1938, the date of the injury, to February 4, 1939.

Section 4a of Art. 8307, Vernon's Ann. Civ.St. provides: "Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employé or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

The jury found that: (a) Appellee's employer, Peavy-Moore Lumber Company, had notice of his injury within 30 days after May 30, 1938, the date he was injured; (b) Appellee filed his claim for compensation with the Industrial Accident Board; (c) immediately after his injury, Dr. M. M. Hearne, the company physician, advised appellee that his injury would be temporary; (d) from time to time after he was injured, Dr. Hearne advised appellee that his injury would be temporary; (e) immediately after his injury, Dr. Hearne advised appellee that his injury was not of a permanent nature; (f) from time to time after he was injured, Dr. Hearne advised appellee that his injury was not of a permanent nature; (g) appellee relied upon the advice given him by Dr. Hearne; (h) the advice given appellee by Dr. Hearne caused him to delay filing his claim for compensation with the Industrial Accident Board; (i) on account of the advice given him by Dr. Hearne, appellee delayed filing his claim for compensation from June 1, 1938, to February 4, 1939; (j) the advice given appellee by Dr. Hearne "constituted good cause" for appellee "not filing his claim with the Industrial Accident Board"; (k) appellee

"had good cause" for not filing his claim with the Industrial Accident Board from June 1, 1938, to February 4, 1939, and he had good cause "for not filing his claim for compensation during all of such period of time"; (1) on or about the 22d day of December, 1938, W. S. Miller, one of appellant's representatives, stated to appellee that it would not be necessary for him to file a claim for compensation with the Industrial Accident Board, and appellee believed and relied upon the statement made to him by W. S. Miller, and the statement made to him by W. S. Miller caused him "to delay the filing of his claim for compensation with the Industrial Accident Board until the date that the same was filed," "because of the statement so made to him * * * by the said W. S. Miller" appellee "had good cause for not filing his claim for compensation with the Industrial Accident Board until the same was filed," and "such good cause" continued to exist from the time Miller made his statement to appellee until appellee filed his claim for compensation with the Industrial Accident Board.

On the issue of "good cause" the court, in rendering judgment, found the following facts supplementary to the jury's verdict:

"That the said company had notice of plaintiff's injury within thirty (30) days after the same was received; that the plaintiff did not present a claim for compensation to the Industrial Accident Board of the State of Texas until the 4th day of February, 1939, but had good cause for not presenting his said claim for compensation to the Industrial Accident Board from the date of his said injury until the date he prepared his claim for compensation and forwarded the same to the Industrial Accident Board. In this connection, the court finds that the defendant was a laboring man, being uneducated and barely able to read and write. That the plaintiff, immediately after his injury was received, consulted Dr. M. M. Hearne, the doctor for the Peavy-Moore Lumber Company, at Deweyville, Texas, and was advised by the said doctor that his injury was not permanent, and that the plaintiff would in a short time fully recover. That the plaintiff continued to consult the said Dr. Hearne from time to time until on or about the date that his claim for compensation was prepared and filed with the Industrial Accident Board. The court finds

that, notwithstanding the fact that the plaintiff suffered pain from the date of his injury, he relied upon the advice of the said Dr. Hearne from the date the said injury was received until on or about the date that his claim was prepared and forwarded to the Industrial Accident Board, as just stated. That after the plaintiff received the said injury, he suffered pain all along, but such pain was less severe at times and he had reason to believe that his injury was not permanent and that he would recover, and he was encouraged by the advice of the said Dr. Hearne, and, desiring to work, believed all along that the representations of the said Dr. Hearne were true.

"The court further finds that on or about the 22nd day of December, 1938, a representative of the defendant called to see plaintiff and endeavored to conclude a settlement with him, and at such time advised the plaintiff that it was not necessary for him, the plaintiff, to present a claim for compensation to the Industrial Accident Board; that at such time the plaintiff was still unaware of his true condition; and that, while the plaintiff understood when he was first injured that he would be required to file a claim for compensation if he was permanently injured, he, realizing that the said agent was fully informed and acting with authority, believed that the representation so made was true, and that it would not be necessary for him to file a claim for compensation; and, relying upon such representation, the plaintiff did not prepare and forward his claim to the Industrial Accident Board until the 4th day of February, 1939, when he first learned that such claim had to be filed. That he relied upon the representation of said representative from the date such representation was made until the claim for compensation was actually prepared by him and forwarded to the Industrial Accident Board on the 4th day of February, 1939.

"The court further finds that the defendant was relying upon the representations of the said Dr. M. M. Hearne from the date of his injury until on or about the 22nd day of December, 1939, and that the evidence to this effect was undisputed and born out by the verdict of the jury; and further, that the plaintiff was relying upon the representations of the said Dr. Hearne when, on the 22nd day of December, 1938, he was told by the said repre-

sentative of the defendant that he did not have to file a claim for compensation. That because of the advise received by the plaintiff from the said Dr. Hearne, and from the information received by the plaintiff from the said representative of the defendant, he, the plaintiff, did not file his claim for compensation from the date of his injury until the date that the same was prepared by him and forwarded to the Industrial Accident Board on the 4th day of February, 1939. That the statements of the said Dr. Hearne and the representation of the said representative constituted a good cause for the failure of the plaintiff to file his claim for compensation before the same was prepared by him on the 4th day of February, 1939, and filed with the Industrial Accident Board on the 8th day of February, 1939.

"The court finds that due to the advice received by the plaintiff from the said Dr. Hearne and the representation of the agent or representative of the defendant, the plaintiff was misled and deceived; that the said Dr. Hearne gave the advice to plaintiff in good faith, but yet nevertheless, the plaintiff was deceived or misled about his true condition, and, while Dr. Hearne believed that the plaintiff's injury was not of a permanent nature and that plaintiff would recover, the plaintiff finally contracted traumatic neuritis as a result of said injury, and as a result of the injury and such disease, the plaintiff suffered a feverish condition at times and suffered a pain throughout his entire body. Further, in this connection the court finds that on or about the 22nd day of December, 1938, the agent of the defendant did lead the plaintiff to believe that it would not be necessary for him, the plaintiff, to file a claim for compensation, and that due to the advice of Dr. Hearne and the representation of the defendant's agent, the plaintiff did not file his claim for compensation before the date the same was prepared and filed by him; and that during all of the period of time intervening between the date of plaintiff's injury and the date of the claim for compensation and the filing thereof with the Industrial Accident Board, the plaintiff had good cause for not filing his said claim for compensation because of the advice of the said Dr. Hearne, the representation of the agent of defendant, and because of the fact that plaintiff would apparently improve from time to time, and because of the fact that the plaintiff was an uneducated man and barely able to read and write, and because of plaintiff's desire to work, and because of plaintiff's utmost faith and confidence in the said Dr. M. M. Hearne."

Appellant has presented no assignments against the findings of fact of the trial court.

 The Commission of Appeals, in Ward et al. v. Etier, 113 Tex. 83, 251 S.W. 1028, 1029, answering certified questions for the Supreme Court, ruled that it was the "better practice" for the trial court to prepare and file separate findings of fact on issues not submitted to the jury, and which in no way conflict with the findings by the jury. On that point, construing Art. 2190, Vernon's Ann.Civ.St., the court said: "By authority of the statute, the findings on all such issues, when not written and filed by the court, upon appeal or writ of error, are deemed found by the court in such manner as to support the judgment; provided there be evidence to sustain such finding. But there is nothing in the statute suggesting that the court may not reduce his findings on all such issues to writing and file them in the record. Reason would suggest this the safer and better practice, for then, instead of statutory presumptions as the foundation of the judgment, there is substituted the concrete evidence of the court's actual findings as its basis. The legal presumption as to the findings might be contrary to the court's actual findings, where those findings are not reduced to writing and filed; that is, the court might draw an erroneous legal conclusion from a finding of fact. In the absence of the filing of such finding the legal presumption would be that the finding of fact was such as to support the judgment, though the actual finding might have been directly to the contrary. If such finding were reduced to writing and filed, instead of presuming that the finding was such as would support the judgment, the judgment would, of necessity, be modified to conform to the legal results flowing from such facts."

So, the appellate court must look to the facts found by the court in support of a judgment. On this point, see also Wichita Falls & Oklahoma Ry. Co. v. Pepper, Tex. Sup., 135 S.W.2d 79. Since the court had the power to make these supplemental findings, they are binding upon appellant except where attacked by proper assign-

ments of error. Jefferson County Drainage District No. 6 v. Southwell, Tex.Civ.App., 32 S.W.2d 895. The findings of fact made by the trial court support the judgment, and these findings not being attacked, the judgment of the lower court may be affirmed on this ground, and it is so ordered.

However, if we are in error in that conclusion, we now proceed with a review of the facts in support of the jury's verdict, and appellant's assignments attacking the jury's verdict.

Appellee testified (Q. and A. reduced to narrative): "On or about the 30th day of May, 1938, I was employed by Peavy-Moore Lumber Company, at Deweyville, in Newton county; on that date I received an injury. The first thing I did after being injured was to go to the office of Dr. M. M. Hearne, the doctor of Peavy-Moore Lumber Company. I went to him 'all along' from the time I was injured until about the 22nd day of January, 1939; I continued to see him during all of that time. After I was injured, I returned to my work and worked for Peavy-Moore Lumber Company 17 or 18 days, something like that, in the same line of employment. At the end of that time, well, my work at Deweyville required—I had to work on two floors, up stairs and down stairs. If we shut down it had us running up and down the steps and I couldn't get up and down the steps; it hurt my leg; and I got a job at Orange at the paper mill where I would have one floor to work on and didn't have any carriage or anything to get around on. The work I was employed to do at Orange was lighter work, I didn't have any steps to climb up or down. Doctor Hearne told me each time I would go to him that my injury would get well, and told me it would do better if I kept it exercised, and I did what he told me to do. He would tell me every time I would go my leg would get well, but he never did give me anything but one bottle of medicine and told me to wear a brace. I continued to see Dr. Hearne all during the time from the time I was injured until about the 22nd day of January, 1939; all during that time Dr. Hearne told me all the way through I would recover. I went to Dr. Pearce between the 20th and 23rd of last January (1939); I went to him to find out the condition of my leg. At that time I found out that I had an injury to my leg that would not get well. Up to January 20, 1939, my leg hadn't gotten any better; it was worse than on the 10th or 12th of December, 1938. On or about that date one of defendant's representatives called on me; I had a conversation with this representative. Well, I talked to him about getting another Doctor or doing something to see what was the matter about my leg and my condition; I told him I wasn't going to be able to keep on much longer if there wasn't something done. He said 'Well, he was going into headquarters and he would be back about the first of the year and they would do something about it.' He wanted me to settle with them for $25.00, the first one that come, and I told him I didn't know my condition and we ought to get another doctor, send me somewhere and find out what was the matter; I didn't want any settlement; that would take care of that. * * * Well, he came over there and we talked about my condition. He came over to Deweyville and talked to that Doctor to find out more about it. He came back and he said he wanted to settle with me and he said he would give me $25.00. I told him I didn't want to settle; I wanted to get some more Doctors to examine me and see about my condition; whether I would get will or not. The defendant's adjuster talked to me the first time on the 12th or 14th day of December, 1938. * * * He told me—I told him if he didn't do something I would have to take it up with the Board. He told me it wouldn't be necessary to do that, he would make everything satisfactory. * * * He told me it wouldn't be necessary; a satisfactory settlement would be made and it wouldn't be necessary to file a claim with the Board; and told me the way it was, I had been working a good deal and he couldn't do much about it and he went into headquarters and would be back about the first of the week. The adjuster offered me $25.00. He told me that he would come back about the first of the year and do something about it; the first adjuster didn't come back, a Mr. Zimmerman came back the first week in January, and offered me $100.00; that offer didn't appeal to me. No, sir; I told him I wouldn't file any claim, I wanted him to get another Doctor and see what was the matter with my leg and get the thing straightened out. I knew at that time that I wasn't going to accept the $100.00. Well, the conversation was that he offered to pay me $100.00. I wanted him to send me to another Doctor or pay me compensation

while I was off and get me another Doctor to treat my leg and see what he could do about it; and he told me he would be back in two weeks. I knew that I didn't want to settle for $100.00 regardless of what any Doctor might think of my condition. I told Mr. Zimmerman that if there wasn't anything more than that wrong with me I didn't want anything. After Dr. Pearce examined me, I went back to Deweyville to Dr. Hearne and told him what Dr. Pearce said; he didn't examine me any more. He told me that Dr. Pearce should not have told me that because he didn't know whether or not my leg would get well. At that time he told me that my leg would get well. After I saw Dr. Hearne at that time, I went over to the office of Mr. Carroll Walters, the head bookkeeper of Peavy-Moore Lumber Company, at Deweyville, and talked to him about my condition. He gave me the address of the defendant's adjuster, and told me to write him; I did write the insurance company. That letter was dated January 31, 1939. I believed all along what Dr. Hearne told me; I didn't want to believe anything else; I relied upon what he told me; all along when I went back to his office I would argue with him and tell him I wasn't getting any better; he told me it would get well and I believed what he told me until I went to see Dr. Pearce; I trusted Dr. Hearne explicitly; I relied upon what he told me—he was supposed to know; he was supposed to know and I thought I would get well. I went to Dr. Pearce between the 20th and 23rd of January, 1939—I went to him to find out about the condition of my leg. From the date I was injured, up until I saw Dr. Pearce— all during that time—I believed that Dr. Hearne was making true representations to me about my condition. On or about the 12th or 14th of December, the defendant's adjuster told me that it wouldn't be necessary to present a claim for compensation and that he would make everything satisfactory. I knew that it was necessary to make a claim to the Industrial Accident Board; I knew that fact in May, 1938, I knew it on the 10th or 12th of December, 1938. One is supposed to make a claim unless he has a good reason for not doing it; whether or not one is required to make a claim to draw compensation depends on his condition; when men get hurt at the mill I knew that it filed claims. When I talked to Mr. Miller he told me I didn't

have to file a claim; he told me it wouldn't be necessary—there would be a satisfactory settlement made. He told me—I told him if he didn't do somthing I would have to take it up with the Board. He told me it wouldn't be necessary to do that, he would make everything satisfactory. I relied on what he told me. He told me it wouldn't be necessary; a satisfactory settlement would be made and it wouldn't be necessary to file a claim with the Board; and told me the way it was, I had been working a good deal and he couldn't do much about it and he went into headquarters and would be back about the first of the week. I filed my claim about the 1st of February. You (speaking to his counsel) told me I would have to file a claim. Your information to me was the first I knew that I had to file a claim for compensation after I had had that conversation with Mr. Miller. After I employed you (his counsel) I made out a claim for compensation and filed it; my claim is dated the 4th day of February, 1939. I continued to work until about the 28th of March, 1939; I worked until I could not work."

Dr. M. M. Hearne testified: "From time to time Mr. I. M. McDaniel came to see me and I discussed with him his condition. I told him in all instances that, in my opinion, he would recover. I recommended to him to continue to use his leg; yes, I thought he could go ahead and work."

Mrs. I. M. McDaniel testified: "After Mr. McDaniel was injured, from time to time he consulted Dr. Hearne—all along— about his condition; sometime his leg would get better and other times it would get worse; Dr. Hearne was treating him and told him his leg was going to get well; we had lots of confidence in Dr. Hearne and Mr. McDaniel believed his leg would get well; it would get better and get worse, and Mr. McDaniel went to work when he ought not to; he was off two days—he was off, but he was anxious to work."

The testimony, as summarized, supports the answer of the jury to all questions submitted to them on the issue of good cause, and the supplementary findings made by the court. The facts found by the jury support the jury's answer that "good cause" existed. Under the evidence, appellee believed that his injuries were

trivial and that he would get well, and for that reason delayed filing his claim. In Texas Employers' Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405, 408, the court said: "That the employee did not believe his injuries to be serious would clearly afford a good cause for not giving notice and filing claim until it was learned that they were serious. Compensation is not provided for pain and suffering, but for loss of wages, and there would arise no necessity for giving notice or filing a claim so long as the employee lost no time from his work, but believed his injuries were trivial."

See also Western Casualty Co. v. Lapco, Tex.Civ.App., 108 S.W.2d 740. The facts in the case at bar have direct support in the Clark case—believing that his injuries were trivial, and that he would get well, appellee did not file his claim until the 4th day of February, 1939. The fact that appellee suffered pain off and on from the date he was injured until he filed his claim, did not destroy his good cause. On that very point, in Gulf Casualty Co. v. Taylor, 67 S.W.2d 415, 416, this court said: "Under the evidence, from the time appellee was injured up until just before he filed his claim with the Industrial Accident Board, he was advised by his attending physicians that his injury was temporary and not permanent, that he would recover under the treatment that was given him, and, though he was in constant pain from the date of his injury up to the time he filed his claim, his testimony was that he believed these statements, and, relying thereon, did not file his claim with the Industrial Accident Board. These facts were pleaded by appellee, and we think thereby the issue of good cause was duly raised."

That appellee's injury was slow in developing into a permanent, total incapacity, since he believed that his leg would get well, did not destroy his good cause. Texas Employers' Ins. Ass'n v. Jones, Tex. Civ.App., 70 S.W.2d 791, affirmed by Supreme Court, 128 Tex. 437, 99 S.W.2d 903. See also Texas Employers Ins. Ass'n v. Little, Tex.Civ.App., 96 S.W.2d 677. The evidence supports the trial court's conclusion that appellee was ignorant. In Western Casualty Co. v. Lapco, Tex.Civ. App., 108 S.W.2d 740, the court held that a representation made by one of the insurance company's agents to an ignorant claimant that she was not entitled to compensation for the death of her husband was sufficient to support the issue of good cause. In Zurich General Accident & Liability Ins. Co. Ltd., v. Lee, 135 S.W.2d 505, this court held that representations made to the claimant by his doctor that his eye trouble was not due to an injury, supported the issue of "good cause" for not filing his claim from May 20, 1936, to July, 1938. On authority of the cases cited, we overrule appellant's assignments that the evidence was insufficient to raise the issue of good cause, and that the findings of the jury were against the overwhelming weight and preponderance of the evidence.

■ The court did not err in refusing to submit appellant's requested issue whether appellee, prior to November 30, 1938, "had begun to doubt Doctor Hearne's statement to the effect that he would recover from his injury." This issue was a mere negative submission of the affirmative facts submitted by the court's charge. It has been too often held to require citation of authorities that the trial court is not required to submit the simple negative to the claimant's grounds of recovery.

■ Appellant requested the court to submit an issue that upon November 30, 1938, appellee knew that his condition had not responded to treatment. This issue was merely evidentiary; that he knew that his condition had not responded to treatment did not take from him the right to accept and rely upon the medical advice of Dr. Hearne.

■ The requested issue that since appellee's condition had not improved between November 30, 1938, and December 10, 1938, whether appellee "continued to rely upon the statements of Dr. Hearne to the effect that he would get well," was a mere resubmission of issues embodied in the main charge.

By two special issues, appellant requested the court to send to the jury whether or not appellee, on December 10, 1938, "believed at such time that his physical condition was not improving"; whether or not at that time he "doubted the statements of Dr. Hearne to the effect that he would get well." What we have said above in ruling on appellant's requested issues controls these requested issues.

■ We give special issue No. 7-E: "From a preponderance of the evidence,

"during what period of time do you find that plaintiff delayed filing his claim for compensation, if he did so delay the filing thereof, on account of the advice, if any, given to him by the said Dr. M. M. Hearne?"

Appellee as one ground for good cause plead that he consulted Dr. Pearce on the 20th of January, 1939; he did not plead that he ceased to rely upon the representations made to him by Dr. Hearne subsequent to January 20, 1939. On that statement it was not error by the form of issue No. 7–E to permit the jury to return a finding that appellee delayed the filing of his claim, relying on the advice given him by Dr. Hearne from June 1, 1938, to February 4, 1939. Issue No. 7–E was not "a comment upon the weight of the evidence"; the form of the issue did not suggest to the jury that appellee's reliance upon the advice given him by Dr. Hearne would constitute "good cause."

 It was not error "to refuse the defensively tendered issue inquiring as to whether or not after entertaining settlement negotiations claimant was ever willing to accept any offer made to him by an adjuster of the Company and whether claimant ever communicated any offer which he would accept." This was nothing more than an evidentiary issue; notwithstanding appellee was not willing to accept the offers of settlement made by appellant's agents and, in turn, did not submit an offer that he would accept, did not destroy, as a matter of law, his right to rely upon the representations made by the agents that they would give him a settlement, and that it was not necessary for him to file his claim.

We give special issue No. 7–F: "Do you find from a preponderance of the evidence that the advice given by the said Dr. M. M. Hearne to plaintiff, if any, constituted good cause for plaintiff not filing his claim with the Industrial Accident Board?"

We overrule the exception that this issue sent to the jury "a mixed question of law and fact," which the jury had no right to answer.

Special issue No. 9–a: "Do you find from a preponderance of the evidence that the plaintiff believed the statements so made to him, if any, by W. S. Miller, at said time?" did not "cast upon the defendant a greater burden than is imposed by law requiring the jury to find a negative answer by the preponderance of the evidence, to the prejudice of defendant."

Special issue No. 16: "Do you find from a preponderance of the evidence that such total incapacity, if any, of plaintiff resulting from such injury, if any, is permanent?" was not subject to the exception that it required "the finding of a negative answer by the jury from a preponderance of the evidence, thereby imposing upon defendant a greater burden than is imposed by law, although defendant should be entitled to a negative answer should the jury find that the evidence is evenly balanced and not preponderating on their side."

What we have said overrules all of appellant's assignments and propositions brought forward in its brief. The judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.