# WILLIAMS M. HAWKINS V. SAFETY CASUALTY COMPANY.

No. A-1369. Decided January 7, 1948.
Rehearing overruled February 4, 1948.
(207 S. W., 2d Series, 370.)

*Lamar Hart,* of Beaumont, for relator.

*Walace Hawkins,* of Dallas and *Jack Vickrey,* of Beaumont, for respondent.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This is a workmen's compensation suit in which the trial court instructed a verdict for the respondent insurance company on the sole ground that the claimant failed to raise a fact issue as to "good cause" for not filing his claim with the Industrial Accident Board within the six months required by Sec. 4a of Art. 8307, V. A. C. S. The judgment of the trial court denying recovery was affirmed by the Court of Civil Appeals. 204 S. W. (2d) 866.

The claimant, William M. Hawkins, who is the petitioner, sustained an accidental injury on July 3, 1945, while in the course of his employment in the paint mill of the Magnolia Petroleum Company. The injury occurred while he was loading one of the mills with lead. In that process he was attempting to place on the mill an iron head weighing about 150 pounds. The head began to revolve causing him to fall in a sittting position on a concrete floor while holding the mill in an effort to prevent spilling its lead contents. While in this position he strained his back, left knee and right shoulder very severely. His foreman sent him immediately to Dr. Williams, the company physician, where he was examined and treated. The physician taped his back, knee and shoulder, had X-rays made of his injuries, and treated him for about seven months thereafter.

The claimant did not remember the exact date he returned to work after his injuries on July 3, but one of his fellow workers testified he resumed his labors on July 5, after the holiday on July 4. This associate also testified that the claimant worked on July 6, and steadily thereafter until the witness left the °company the following January, except "he laid off a good many days," and on one occasion was off duty for a period of three weeks.

The claimant testified he resumed his labors at the paint

mill soon after his injury. He thereafter performed lighter work than that to which he had been accustomed prior to his injury. His helper and others assisted him in the heavier work. He ceased working for the Magnolia Petroleum Company on March 8, 1946, but the reason therefor was not shown. He then performed yard work and cleaned up trash about various homes in Beaumont. In the early part of April he began working as a longshoreman for P. C. Pfeiffer at the dock in Beaumont. On April 12, while in that employment, he was injured again when some bags of fertilizer fell on him, but recovered from those injuries. His activities thereafter were not shown.

During the eight months he worked at the paint mill following his first injury, the claimant suffered some pain, but was able to perform light work most of the time. He did not know how many days he was off duty during that period, but on cross-examination estimated that he missed working as many as sixty, and possibly ninety, days. From time to time in that period he received treatments from the company physician. It was his uncontroverted testimony that this physician was assuring him all along that his injuries would not be serious. He also thought then that his injuries were not serious and that they would soon "clear up" so he could resume the hard labor to which he had been accustomed.

On March 19, 1946, after the termination of his relations with the Magnolia Petroleum Company, and while raking up trash in some lady's yard in Beaumont, he strained his injured leg and felt a sudden and severe pain. He thereupon had to cease work and go home and to bed. He continued to feel worse, and in three or four days he went to see Dr. Joe Record who examined him thoroughly and informed him he was in "bad shape" and could not get well. On March 27, 1946, claimant for the first time saw his lawyer who mailed his claim that day to the Industrial Accident Board.

On May 13, 1946, and upon three succeeding occasions prior to the time of the trial, claimant was examined by another physician, Dr. Edward C. Ferguson, who had X-rays made of the injuries and examined the claimant's blood and urine in a clinical laboratory. From his examinations he expressed the opinion that the claimant was totally and permanently incapacitated.

In this state of the record, and at the close of claimant's testimony, the trial court granted the motion of the insurance

company for a peremptory instruction and rendered judgment thereon denying petitioner a recovery upon the theory that as as a matter of law no good cause was shown for the failure of claimant to file a claim for compensation within the six-months period required by law.

It is our opinion that under the facts of this case the trial court was unauthorized to instruct a verdict against the petitioner, and that the Court of Civil Appeals erred in affirming the judgment based thereon.

■ The term "good cause" for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. Martin v. Travelers Ins. Co., 196 S. W. (2d) 544; Great American Indemnity Co. v. Beaupre, 191 S. W. (2d) 883; Lacour v. Continental Casualty Co., 163 S. W. (2d) 676; Texas Indemnity Co. v. Cook, 87 S. W. (2d) 830, writ refused.

■ The law is well settled that a bona fide belief of a claimant that his injuries are not serious but trivial is sufficient to constitute good cause for delay in filing a claim. It also has been held a number of times that the advice of a physician, upon whom a claimant relies, that injuries are not of a serious nature, but are temporary or trivial, is sufficient to justify a claimant's delay until he learns, or by the use of reasonable diligence should have learned, that his injuries are serious. Texas Emp. Ins. Co. v. Roberts, 135 Texas 123, 139 S.W. (2d) 80. Texas Employers' Ins. Assn. v. Frankum, 145 Texas 658, 201 S. W. (2d) 800; Texas Employers' Ins. Assn. v. Clark, 23 S. W. (2d) 405; Consolidated Underwriters v. Pruitt, 180 S. W. (2d) 461; Dean v. Safety Casualty Co., 190 S. W. (2d) 750; Zurich General Accident & Liability Ins. Co. v. Lee, 135 S. W. (2d) 505; Traders & General Ins. Co. v. Jacques, 131 S. W. (2d) 133; Texas Employers' Ins. Assn. v. Fowler, 140 S. W. (2d) 545; Federal Underwriters Exchange v. McDaniel, 140 S. W. (2d) 979; Gulf Casualty Co. v. Taylor, 67 S. W. (2d) 415; Hartford Accident & Indemnity Co. v. Jackson, 201 S. W. (2d) 265.

The cases relied upon by the respondent insurance company may be distinguished from the authorities cited above because in each of them the facts were such that the claimant knew, or by the use of reasonable diligence should have known, that he was seriously injured and that he had a claim for compensation which should have been filed. Typical of those cases are the following: Cunningham v. Fidelity & Casualty Co. of New York, 102 S. W. (2d) 1106; General Accident Fire & Life Assur. Corp. v. Martin, 110 S. W. (2d) 258; Sandage v. Traders & General Ins. Co., 140 S. W. (2d) 871, writ refused; Johnson v. Employers' Liability Assur. Corporation, 131 Texas 357, 112 S. W. (2d) 449; Texas Employers' Ins. Assn. v. Allen, 140 S. W. (2d) 897; Durham v. Texas Indemnity Ins. Co., 60 S. W. (2d) 255.

Without discussing these cases in detail it appears conclusively that in each of them there is a total absence of diligence in the prosecution of the claim. Facts are evident in each case which admit no other reasonable conclusion than that the claimant did not use that degree of diligence that an ordinarily prudent person would have used under the same or similar circumstances.

Briefly, in the Cunningham case the claimant developed a serious heart condition about which he knew and was advised by physicians. In the Martin case the claimant "knew from the day he received his accidental injury that he was in bad condition." In the Sandage case the claimant suffered a serious injury to his spine, and his back became swollen with a large knot on the right side. It was with great difficulty that he worked at all. He suffered severe pains from the very moment of his injury, and was informed by his physician that some of his vertebrae were dislocated. In the Johnson case the claimant received a serious hernia which appeared immediately and visibly and caused pain. He could both see and feel the injury, and an ordinarily prudent person would have known it was serious. In the Allen case the claimant suffered a back injury and was in a hospital for 28 days. Six months before he filed his claim he was informed by his physician that the bones in his spine were dislocated. In the Durham case the claimant knew his condition, was advised of it by his family physician, and was never able to work after his injury.

Thus, in these cases and others like them, it is readily apparent that the claimant failed to use ordinary care in the prosecution of his claim. But no such situation exists in the case

before us. The injuries of the claimant were in the joints of his knee, shoulder and spine. They were not open and visible to him, and their severity and true character were to be revealed only by the most minute, technical and scientific examinations by medical experts. Though he experienced some pain he was able to work most of the time. He was being advised from time to time by the company physician that his injuries were not serious. He was of the opinion that they were trivial and that he would soon be able to resume his usual hard labor. Under those circumstances we cannot say as a matter of law that he lacked ordinary diligence in not filing his claim.

Neither do we conclude as a matter of law that he was imprudent in delaying eight or nine days in filing his claim after he learned on March 19, 1946, that his injuries were to be serious. During that interval he was examined by another physician who confirmed his views as to the severity of his injuries. On the eighth day after March 19 he visited his attorney who immediately filed his claim.

In all cases a reasonable time should be allowed for the investigation, preparation and filing of a claim after the seriousness of the injuries is suspected or determined. No set rule could be established for measuring diligence in this respect. Each case must rest upon its own facts. This court refused an application for a writ of error in Texas Employers' Ins. Assn. v. Fowler, 140 S. W. (2d) 545, where recovery was allowed upon a jury finding of good cause when 23 days elapsed from the time the claimant was advised for the first time that his injuries were serious until his claim was filed. These delays subsequent to the visitation of knowledge of the true facts, and the delays prior thereto, are ordinarily elements of prudence to be considered by the jury or the trier of facts in finally determining the question of good cause. Like all other issues they become conclusive against the claimant only when reasonable minds could reach no other conclusive.

The judgments of both courts below are reversed and the cause is remanded to the district court.

Opinion delivered January 7, 1948.

Rehearing overruled February 4, 1948.