## COPINJON v. ÆTNA CASUALTY & SURETY CO.

### No. 12272.

Court of Civil Appeals of Texas. San Antonio.

June 27, 1951.

Rehearing Denied Sept. 5, 1951.

G. Woodson Morris, Bob J. Spann, San Antonio, for appellant.

Carl Wright Johnson, Nat L. Hardy, San Antonio, for appellee.

NORVELL, Justice.

This is a workmen's compensation case in which the trial court instructed the jury to return a verdict for the insurance carrier and judgment was rendered accordingly.

In the motion for instructed verdict it was urged "that there was no evidence to show that the plaintiff, Willie Copinjon, had good cause for not filing his claim for compensation within six months after the happening of the accident upon which said claim was based."

It appears that the appellant, Willie Copinjon, while in the employ of Mr. and Mrs. Max Manus, operators of La Louisiane restaurant in San Antonio, Texas, suffered a fall in the kitchen where he was working as a chef. This took place on August 5, 1946, and appellant claims that he was totally and permanently disabled from and after said date.

Immediately following his fall, Copinjon was taken to a hospital where X-ray pictures were taken. After four or five days he was discharged from the hospital and returned to work at the restaurant.

Copinjon did not file his claim with the Industrial Accident Board until December

27, 1948, which was more than two years and three months after the accident had taken place. He continued to work at the La Louisiane restaurant until October 1, 1949, or about nine months after the claim was filed.

Article 8307, § 4a, Vernon's Civil Stats., requires that claims for compensation under the Workmen's Compensation Act be filed within six months "after the occurrence of the injury", provided that, "For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board."

Appellant's pleaded ground of "good cause" for failure to file his claim within the statutory period was, "that when he was injured on or about August 5, 1946, the doctor for the insurance company attended him and at that time assured him that he would be all right and that his injuries were of a trivial nature and that they would not result in any dire consequences, and that accordingly he so believed that they were; that he saw the doctor from time to time and was at such times always assured by him that he would be all right and he believed and relied upon what he told him about his injuries and his getting all right; that it was not until on or about December 23, 1948, that he learned that the injuries he had received at the time of his accident were of a serious nature and that they have resulted in his being incapacitated to work; * * *."

Appellant testified that after his injury he was attended by Dr. T. B. Butler, a practicing physician employed by the insurance carrier, and was assured by said doctor that he would be safely dismissed from the hospital and go back to work and that Dr. Butler gave him some pills and told him to take them in order to relieve his pain but assured him that there was nothing seriously wrong with him. The number of times appellant consulted Dr. Butler does not appear clearly from the statements of facts. Appellant, however, testified that about nine months after the injury took place, Dr. Butler again X-rayed appellant's back and told appellant that he could find nothing wrong with him; that it was nothing serious; and that appellant was going to get well.

Appellant also testified that some time after his injury he went to see a Dr. Stuart, a naturopath, who touched his back and said there was probably something wrong with it, but refused to further examine him until he was released from Dr. Butler's care. It seems that shortly before the claim for compensation was filed, appellant returned to see Dr. Stuart and also consulted a lawyer and filed his claim for compensation with the Industrial Accident Board.

Appellant stated that from the time of his fall he suffered extreme pain; that he was unable to straighten up, but had to walk stooped over at a forty-five degree angle. He said that he continued to work because of economic necessity and because Mr. Manus wanted him to teach some of the other employees how to cook.

It has been held that a good faith belief on the part of a claimant that his injuries were not serious may constitute "good cause" for failing to present a claim within the statutory time. Such belief, however, must meet the primary test of ordinary prudence. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370.

Taking as true his statements of pain and suffering undergone by him following the accident of August 5, 1946, appellant's action in delaying the filing of his claim until December 27, 1948, does not meet the standard of ordinary prudence. This conclusively appears as a matter of law. To hold otherwise would be to effectively nullify the statutory provision designed to secure the prompt filing of claims and prevent frauds oftimes incident to the filing of stale demands. We cannot indulge the over-credulous at the risk of admitting the fraudulent, but must follow the public policy of the state as declared by legislative enactment. The court correctly instructed the jury to find for the appellee. Johnson v. Employers Liability Assur. Corporation, 131 Tex. 357, 112 S.W.2d 449; Texas Employers' Ins. Ass'n v. Leake, Tex.Civ.App., 196 S.W.2d 842;

LaCour v. Continental Casualty Company, Tex.Civ.App., 163 S.W.2d 676; Sandage v. Traders & General Ins. Co., Tex.Civ.App., 140 S.W.2d 871; General Accident Fire & Life Assurance Corp. v. Martin, Tex. Civ.App., 110 S.W.2d 258.

The judgment is affirmed.