AMERICAN EMPLOYERS INSURANCE
COMPANY, Appellant,

v.

O. T. WHITE, Appellee.

No. 3515.

Court of Civil Appeals of Texas.
Eastland.

Jan. 29, 1960.

Rehearing Denied Feb. 19, 1960.

King & Willoughby, Abilene, for appellant.

Scarborough, Black & Tarpley, Abilene, for appellee.

WALTER, Justice.

O. T. White obtained a judgment against American Employers Insurance Company for total and permanent disability benefits under the Workman's Compensation Law. The insurance company has appealed contending (1) that as a matter of law the evidence failed to establish that "good cause" existed for the failure of appellee to file his claim with the Industrial Accident Board within six months after the date of his alleged accident and (2) that the verdict is so contrary to the overwhelming weight of all the evidence as to be clearly wrong.

Our Workman's Compensation Law requires the injured party to give his employer or the company carrying his workman's compensation insurance, notice of his injury within thirty days after his injury and to file his claim for compensation with the Industrial Accident Board within six months after the occurrence of his injury. For "good cause" the Industrial Accident Board or the court may, in meritorious cases, waive strict compliance with requirements for giving notice and filing a claim. Section 4a, Article 8307, Vernon's Ann.Civ.St.

The jury found that White sustained an injury on December 30, 1957, and it was stipulated that no claim for compensation was filed until February 6, 1959. The jury also found that C. W. Martin, the plant superintendent where White worked, informed White that he would file all the necessary claim forms for White with the Industrial Accident Board, and that this constituted "good cause" for failure to file his claim until it was actually filed. The jury also found that White was led to believe by the company doctor, that his injuries were trivial and that he would recover from same as viewed from White's standpoint and that this constituted "good cause" for failure to file his claim until it was actually filed.

We can not agree with appellant's point that, as a matter of law, the evidence failed to establish that "good cause" existed for the failure of appellee to file his claim within six months after the date of his alleged accident. We would be justified in holding, as a matter of law, that "good cause" did not exist only when the evidence taken as strongly as it may be taken in favor of the appellee admits of but one reasonable conclusion which negatives "good cause". The test as to whether "good cause" exists is whether or not the appellee has prosecuted his claim with that degree of diligence that a reasonably prudent person would have exercised under the same or similar circumstances. In determining whether "good cause" did or did not exist each case must be determined on its own merits. This question is usually one of fact. Hawkins v. Safety Casualty Company, 146 Tex. 381, 207 S.W.2d 370.

The appellee is forty-one years of age, married, and has six children. He can not read nor write and works as a common laborer. He was working for Texas Lightweight Aggregate Company at the time of his injury, measuring a "stock pile". It was cold and there was ice on the ground and as he attempted to go around a hole to set a pole he fell into the hole and injured his back. In reply to requests for admissions, appellant admitted (1) that White reported his injury to his employer within thirty days after his injury and (2) that White's injury was reported to the Industrial Accident Board by Charles W. Martin, the plant superintendent, in a report dated January 13, 1958. Within a short time after his accident White reported the details of his accident to Mr. Martin who reduced them to writing. White testified the superintendent told him on this occasion that he would file his claim with the Industrial Accident Board. On cross examination appellee was asked "Now, what did he tell you about filing this claim?" and he answered "He said he would take care of that part of it for me." White further testified the reason that he didn't file his claim was because he thought Martin was going to file it for him. He continued to work for the company until he was laid off in February, 1959. White testified he continued to work after his injury with some difficulty but that he had six kids to support and he was trying to make them a living.

The company doctor was asked this question on direct examination "Now, Doctor, I want you to tell this jury if you ever, during all this period of treatment of Mr. White, ever lead him to believe that his injuries were trivial?" The most favorable answers to this question which would support the jury's answer that the Doctor led White to believe that his injuries were trivial and that he would recover, viewed from White's standpoint, are as follows "Of course, we always encourage patients to get well, and certainly I encouraged him all this time that we kept hoping that this thing would clear up, because most of these back strains do, and at times, he did do a lot better,—and his, of course, would come and go and we did encourage him that he would get well." The company doctor was asked this question "Did you ever tell him not file a claim with the Industrial Accident Board?" and he answered

"I don't specifically remember that Mr. White and I ever discussed his doing that. If we did, I don't remember it, but I do know that I always discourage patients from filing claims or hiring lawyers because it makes it so much harder to get well. So, I encourage patients to get well; I'm treating patients and not lawsuits, so we do everything we can to keep them from going to a lawyer." White testified that the company doctor advised him not to file a claim. When White was asked on cross examination what the company doctor told him, he answered "Well he told me he wouldn't do that, he'd give them time enough to go on and maybe they'd give me somethin' for the time I lost." The appellant also carried a policy of indemnity, hospitalization and doctors insurance for the employees of the company. Appellee filed claims for benefits under this group policy for himself and another member of his family. He received two $30 checks for indemnity from the company. When asked on cross examination "Now, what did you think these checks were for?" he answered "I told you, I didn't know for sure what they was for. I told you I couldn't read nor write."

We do not believe that the cases cited by appellant are factually analogous to those in the case at bar. Appellee's injuries were not such that he could determine for himself the seriousness of them, and, as said by our Supreme Court in Hawkins v. Safety Casualty Company, 207 S.W.2d 370, 373, "They were not open and visible to him, and their severity and true character were to be revealed only by the most minute, technical and scientific examinations by medical experts." From the evidence in this record we have concluded that reasonable minds could differ as to whether or not this evidence constituted "good cause". Anchor Casualty Company v. Chia, Tex.Civ.App., 255 S.W.2d 315 (Writ Ref. N.R.E.)

Our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, has set forth the rule to be followed by the courts of civil appeals when passing on great weight and preponderance of the evidence points. We have followed the principles of law announced by our Supreme Court in said case in passing on appellant's point that the verdict is so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust and find no merit in it and same is overruled.

We have considered all of appellant's points and find no merit in them and they are overruled.

The judgment is affirmed.