Johnnie E. BRAY, Appellant,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.

No. 15931.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 29, 1972.

Rehearing Denied Aug. 31, 1972.

908

Brown & Haden, Harry L. Tindall, Houston, for appellant.

Tom M. Davis, Jr., Charles G. King, III, Houston, for appellee; Butler, Binion, Rice, Cook & Knapp, Houston, of counsel.

PEDEN, Justice.

Appeal from summary judgment granted to a workmen's compensation carrier on the basis that the late filing of the appellant's claim was, as a matter of law, not supported by good cause.

The insurance carrier's unverified motion for summary judgment stated that the plaintiff's alleged accidental injury occurred on June 27, 1968 and that no good cause existed for his failure to file his claim up to the date he filed it, May 20, 1970, pointing out that in the plaintiff's deposition he stated that in November, 1969 he was told by the lady in charge of insurance claims at his employer's company that nothing had been filed with the Industrial Accident Board on his behalf. Also, that from that time until his discharge on May 15, 1970 he had no conversation with anyone at his place of employment about his workmen's compensation claim.

The plaintiff filed an affidavit in response to the motion for summary judgment. It contains allegations in due form detailing the circumstances of his receiving an accidental injury in the course and scope of his employment with Earle M. Jorgensen Steel Co. on June 27, 1968 and his reporting the injury to Mr. Charlie Holmes, superintendent of inventory, within 5 minutes afterward. That Holmes told him not to worry, that they would take care of everything. The affidavit further recites:

"I continued working for Earle M. Jorgenson Steel Company for approximately

four to five weeks without missing any time. However, I began to experience severe headaches and was required to seek medical treatment. I also had a knot on my forehead. I also reported the accident to Charles Daniels, a superintendent at Earle M. Jorgenson Steel Company and he assured me not to worry about anything and that the company would take care of me.

2.

"During the year 1968 I was treated by Dr. James K. McNatt. Finally, in August, 1968 I went to Dr. John B. Stanford, my family doctor. In December, 1968 I went to see Dr. John Skogland, a neurologist in Houston, Texas. In April or May, 1969 I was admitted to Medical Arts Hospital and was a patient for approximately one week. I was then released and was then seen by Dr. Robert J. Goodall, a neurosurgeon in Houston, Texas. I was placed in St. Joseph Hospital in January, 1970 and released from the hospital on February 1, 1970. During my hospitalization I had surgery on my neck to sever some of the pinched nerves causing the severe headaches and other pain in my neck and shoulders. During this hospitalization and medical treatment I had to pay no money on my medical treatment. It was my understanding that all of the bills would be paid by the company since I was injured on the job.

3.

"It is true that in approximately November, it could have been as late as December, 1970, or even January, 1971 that I talked with a secretary at Earle M. Jorgenson Steel Company and learned for the first time that no claim forms had been filed with the Industrial Accident Board. However, she assured me that she would immediately file the forms with the Industrial Accident Board. I relied upon these representations and had I known that she was not going to file them as she represented, I would have filed the forms myself. However, I had been at Earle M. Jorgenson Steel Company for more than 17 years and I wanted to continue working for them and trusted and relied upon their representation. It was not until I was fired from the company in May, 1970 that I discovered that the company had not filed the forms as they so represented. I immediately hired the Law Firm of Brown & Haden and my forms were filed within a matter of few days with the Industrial Accident Board, after I was fired.

"If I had realized that the company would not keep their word and process my claim as they had promised, I would not have relied upon them to do what they said they would do."

We review the appellant's deposition testimony, which was also before the trial court as summary judgment evidence. In it the appellant testified that his foreman knocked over a ladder that hit the appellant on the head on or about June 27, 1968 while he was working on his job with the Jorgensen Steel Co., for which he had worked for about 15 years.

In 1960 he had had an accidental injury while working for Jorgensen Steel Co. and had a back operation as a result. He received workmen's compensation benefits of $35 per week while he was off the job that time and total workmen's compensation benefits of $3800 from 1960 injury. That hospital bill was paid by his workmen's compensation carrier, and he made no claim under his employer's group medical policy because of the 1960 accident. He had no other workmen's compensation claims before June 27, 1968.

A few minutes after he was injured on or about June 27, 1968, the appellant reported this fact to the superintendent and to his immediate boss, Charlie Holmes, who said "Well, don't worry about it. We will take care of everything."

He worked for the next four or five weeks, but he had a headache all that time. He had a knot over his left eye for about

three months. He missed a few days' work in 1968 after the accident, probably a total of more than a week. About six weeks after he was hurt he went to Dr. McNatt on his own, and kept seeing him into 1969. Dr. McNatt said his headaches were probably caused by a pinched nerve near his fifth cervical space. He thinks it was in 1968 that Dr. McNatt put him in the hospital. He stayed there about eight days. He knew at the time that this hospital bill was paid by Jorgensen "through their group insurance." Their group carrier was Aetna, he believes.

Before he went into the hospital he told his boss, Charlie Holmes, that his doctor was putting him there to find the cause of his headaches. Holmes replied "Don't worry about a thing. It will be here when you get back."

In January, 1969 he went to see Dr. Skogland on his own volition. Several weeks later Dr. Skogland put him into a hospital for about a week for his headaches. Neither doctor told him when he could expect to get over them.

The headaches had started right after the injury, but they got much worse about four months later. He missed work from time to time during 1969 because of his headaches; he thinks it was a total of about five weeks during that year. He continued to see Dr. Skogland twice a week until about November of 1969.

He saw Dr. Goodall in December, 1969. He was told his headaches were probably caused by a pinched nerve in his neck and that it could probably be relieved surgically by clipping the nerve.

During all this time the appellant had not received any workmen's compensation payments. He knew that his employer carried workmen's compensation insurance.

The hospital bill at Medical Arts Hospital, where Dr. Skogland sent him, was paid by his employer. He had told Holmes that he was going in the hospital about his headaches, and Holmes said to go ahead, that everything would be taken care of.

In the latter part of 1969, either November or December, he asked Holmes if they had filed with the Industrial Accident Board, and Holmes said that everything had been taken care of and that he didn't have anything to worry about. He had no other conversation with Holmes about the matter after that. At about the same time he talked to Holmes he also checked with the lady in charge of insurance claims at Jorgensen Steel Co., the "insurance lady," who is secretary to Charlie Daniels, and asked her if everything had been filed on his June 27, 1968 accident. She checked into it and told him that nothing had been filed with the Industrial Accident Board. He did not talk to anyone else at Jorgensen Steel Co. about this matter from that time (about November, 1969) until he was discharged on May 15, 1970 for missing too much time from work.

Dr. Goodall had put him in the hospital about April 1, 1970, and had clipped the nerve in his neck. He was in the hospital for about a week and two or three days. He missed work for about two other weeks in early 1970 because of the headaches.

A Mr. Thames had promised him in about 1963 that he had a job as long as there was a Jorgensen Co.

Article 8307, § 4a, Vernon's Ann.Texas Civil Statutes, provides that for good cause, strict compliance with the six months' requirement as to filing of the claim before the Industrial Accident Board may, in meritorious cases, be waived.

The appellant's points of error assert that a genuine issue of material fact existed as to whether the appellant had good cause for not filing his claim with the Board within six months.

The test for existence of good cause is whether the claimant prosecuted his claim with that degree of diligence that a person of ordinary prudence would have

exercised under the same or similar circumstances. This is ordinarily a question of fact to be determined by the trier of facts, and may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370 (1948); Torres v. Western Casualty and Surety Co., 457 S.W.2d 50 (Tex.1970).

The Texas Supreme Court held in Allstate Insurance Co. v. King, 444 S.W.2d 602 (Tex.1969) that a person of ordinary prudence would not remain unconcerned about his rights for almost 16 months in sole reliance upon the employer's promise to file a claim, while he was fully aware of his injuries and incapacity and was receiving no payments or benefits of any kind from his employer or its carrier after he stopped working.

■ Appellant's statements show that after he was told by his foreman on June 27, 1968, the day of the injury, that everything would be taken care of, he did not inquire as to whether his employer had filed a claim with the board until some time as early as November of 1969 or as late as January of 1970 (16 to 19 months later) and when he was told that no claim had been filed, but that one would be filed, he did not file a claim himself until May 20, 1970, although he was hospitalized three times for treatment of the injury in question, visited several doctors many times for treatments, was aware that he was receiving no workmen's compensation benefits despite his having received such benefits after suffering a previous injury on the same job.

We conclude that under the facts in our case the trial judge did not err in granting the workmen's compensation carrier's motion for summary judgment.

Affirmed.