The AETNA CASUALTY AND SURETY
COMPANY, Appellant,

v.

Richard Curtis HUGHES, Appellee.

No. 724.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 29, 1972.

Rehearing Denied March 29, 1973.

Fulbright, Crooker & Jaworski, Rufus Wallingford, Houston, for appellant.

Helms, Jones & Pletcher, Richard P. Hogan, Houston, for appellee.

## OPINION

SHARPE, Justice.

This is a workmen's compensation case in which the sole issue is whether the plaintiff-appellee established good cause for failure to file a claim for compensation within six months from the date of his injury. The District Court of Matagorda County, Texas, after jury trial, rendered judgment awarding appellee Richard Curtis Hughes, compensation benefits in the amount of $35.00 per week for 401 weeks based upon total and permanent disability payable in a lump sum, less 135 weeks of payments at the rate of $35.00 per week, or $4,725.00, which had been already paid to him by The Aetna Casualty and Surety Company, defendant below and appellant here.

The jury found that Hughes sustained an accidental injury in the course of his employment with Bay City Drilling Company on July 12, 1963; that such injury was a producing cause of any total permanent incapacity which began on July 12, 1963; that the incapacity was not solely caused by loss of use of his legs; that the injury extended to and affected his right leg at or above the knee; that the injury to his right leg and the amputation below the knee, as so extended, was a producing cause of any total permanent loss of use of his right leg at or above the knee; that the injury to the left leg extended to and affected his left leg at or above the knee and was a producing cause of any total permanent loss of use of his left leg at or above the knee, which began on July 12, 1963; and that Richard C. Hughes believed from July, 1963, to October, 1964 his injuries and conditions would improve, which was good cause for his delay in filing the claim for such period of time.

Appellant asserts two points of error reading as follows:

## "POINT ONE

The trial court erred in overruling appellant's motion for instructed verdict, judgment notwithstanding the verdict and new trial because the evidence conclusively shows that appellee did not timely file his claim for compensation and did not have good cause for his failure to do so.

## POINT TWO

The trial court erred in overruling appellant's motion for instructed verdict,

judgment notwithstanding the verdict and new trial because there was no evidence that appellee had good cause for his failure to timely file his claim for compensation."

■ The evidence on the issue of "good cause" under settled rules and in view of appellant's "no evidence" points will be considered in the light most favorable to the jury findings in favor of Hughes. The evidence reflects that Hughes suffered the injury in question on July 12, 1963 while mowing grass, with a borrowed farmer's tractor, at a lodge on Buck's Bayou in Matagorda County used to entertain guests of Bay City Drilling Company, his employer. The tractor hit a rut and rolled over on Hughes. He was removed from under the tractor and taken to Matagorda General Hospital, in Bay City. On the same day he was transferred by ambulance to Methodist Hospital in Houston where he remained for three months. He received lacerations on his legs, head and hips. Part of his left ankle and heel were cut away. He eventually developed osteomyelitis in his right leg. He was released from the hospital in October, 1963, but reentered in November of the same year and on about 12 other occasions returned to the hospital for treatment of his injuries. Dr. Robert Brownhill, an orthopedic surgeon, at Methodist Hospital supervised his treatments. Eventually, on October 31, 1967, his right leg was amputated. Hughes' claim for compensation was not filed until the latter part of October 1964. Approximately three months after the accident, Hughes' doctor started trying to get him to walk for brief periods. Hughes has not worked since the day of this accident. Bay City Drilling Company received notice of the accident on the day of the injury.

Hughes testified in part as follows: "From the minute I saw Dr. Brownhill always said, 'We are going to wait another three months or four months,' and he said 'You are going to get better,' and he kept encouraging me." Hughes also testified in substance as follows: That when he final-

ly realized the seriousness of his injuries he filed the claim for compensation. He then received a big check from appellant compensation carrier, which company paid $35.00 a week for a period of one hundred thirty-five weeks altogether. At the trial it was stipulated that the appellant paid no compensation benefits or medical bills incurred by Hughes until after he filed notice of claim in the latter part of October, 1964; that after the claim for injury was filed the appellant paid in a lump sum compensation benefits from the time of the accident to the time the claim was filed and also reimbursed for the hospital bills incurred. Hughes recalled discussion concerning reimbursement by appellant Aetna to Travelers for some of the benefits the latter had paid. He also recalled receiving one large check from Aetna that brought him up to date on the number of weeks of compensation. Up to that time Hughes had been receiving his hospital bills paid under a group insurance plan. Hughes' father-in-law at the time of the accident was one of the owners of Bay City Drilling Company. Hughes did not recall exactly when the switch in payment was made. However, it appears that Aetna deliberately made payments by way of reimbursement to Travelers for medical bills previously incurred by Hughes and brought his compenation payments up to date after the filing of his claim. As we view the matter, Aetna in effect made the payments at that time that it would have previously made or been obligated to pay, but which in fact had been paid or incurred on behalf of Hughes under a group insurance plan. Aetna continued payments to and on behalf of Hughes until sometime in 1966, but then ceased making them. In October, 1967, Hughes' leg was amputated. He also received treatment in the Veterans Administration Hospital.

■ We hold that the evidence was legally sufficient to sustain the jury finding of "good cause" for the failure of Hughes to file a claim within six months of the date of the injury. Art. 8307, § 4,

Vernon's Ann.Civ.St. Hughes was charged with the degree of diligence which a reasonably prudent person would have exercised under the same or similar circumstances in his duty to prosecute his claim. Texas Casualty Insurance Company v. Beasley, 391 S.W.2d 33 (Tex.Sup.1965). The totality of the conduct of the claimant must be considered in determining ordinary prudence and whether the evidence raises an issue of good cause for delaying in filing of a claim. If there is any probative evidence of care and prudence in the prosecution of appellee's rights, the sufficiency of the evidence is a question for the jury. Moronko v. Consolidated Mutual Insurance Company, 435 S.W.2d 846, 848 (Tex.Sup. 1968); Texas Employers' Insurance Ass'n v. Crain, 259 S.W.2d 905, 907 (Tex.Civ. App.—Fort Worth 1953, writ ref'd n. r. e.).

■ It is recognized that a good faith belief that the claimant's injuries were trivial, not serious and would not result in any disability, as a result of being misled by doctors or others as to the seriousness of the condition, is "good cause" for failure to file a claim within six months. Harkey v. Texas Employers' Ins. Ass'n, 146 Tex. 504, 208 S.W.2d 919 (1948); Texas Employers' Ins. Ass'n v. Frankum, 145 Tex. 658, 201 S.W.2d 800 (1947); Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370 (1948); Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80 (1940); Maleski v. Texas Employers Insurance Association, 471 S.W.2d 416 (Tex.Civ.App.— Corpus Christi 1971, no writ); Texas Employers' Insurance Association v. Matejek, 381 S.W.2d 942 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Texas Employers Insurance Association v. Sapien, 458 S.W.2d 203 (Tex.Civ.App.—El Paso 1970, writ ref'd n. r. e.); Teague v. Texas Employers' Insurance Association, 368 S.W.2d 643 (Tex.Civ.App.—Austin 1963, writ ref'd n. r. e.).

In Texas Employers' Insurance Ass'n v. Roberts, *supra,* cited by appellant, a recovery was allowed where the claimant was struck on the head by a heavy pipe in September 1934. His skull was fractured and he was otherwise injured. Following the injury plaintiff suffered almost constantly from pains in the left side of his head. He did not think the pain was serious and shortly thereafter returned to work. Plaintiff there filed his claim in September 1936 when the pain became more violent and serious, which the doctor diagnosed as a sinus infection probably caused by the claimant having been struck on the head. A finding that good cause existed for plaintiff's failure to timely file his claim for compensation was upheld.

■ In this case the record shows that the plaintiff was injured in July 1963. He was released from the hospital three months later and was readmitted on other occasions thereafter. Neither appellant nor appellee disagreed that Hughes began to try to walk three months later. Hughes said he was told by his doctor that he was going to get better and that is all he heard. Hughes testified in substance that for a period of time he "never realized the seriousness" of his injury, but when he did he filed his claim for compensation; that his doctors had assured him he would get better. He developed osteomylitis after being hospitalized, but he did not realize the seriousness of this condition. He was getting hospital bills paid by an insurance source. Hughes felt encouraged by his specialist up until just before his leg was amputated below his knee in 1967. The jury may well have assumed Hughes felt he would recover from his injuries until the claim was filed, from what he was told by the doctors. From the evidence a jury could conclude that Hughes did not realize the seriousness of his condition, especially since the belief was based on doctors' assurances. He expressed constant hope of recovery, at least until he filed his claim.

In Texas Employers' Ins. Ass'n v. Portley, 153 Tex. 62, 263 S.W.2d 247 (1953) cited by appellant, the Court found no evidence of "good cause" to exist for filing a claim one year after the accident. There

the plaintiff received a cast on his heel, which his doctor testified was the producing cause of a cancerous condition in his thigh, that subsequently led to the amputation of his leg almost a year later. He then filed his claim. That case is distinguishable from our present case. There the plaintiff did not have assurances of his physician his leg would get better, and in fact he did not testify he continued in this belief as the pain became worse, or until the amputation of his leg. In the instant case there was evidence that Hughes continued to receive the favorable assurances of his doctors for about three years after the filing of his claim, prior to amputation of his leg.

The evidence is legally sufficient to support the jury verdict that good cause existed for the late filing of appellee's claim for compensation. Appellant's points are overruled.

The judgment of the trial court is affirmed.

## OPINION ON MOTION FOR REHEARING

BISSETT, Justice.

Appellant, in its motion for rehearing, insists that the instant case is "virtually indistinguishable" from Copinjon v. Aetna Casualty & Surety Company, 242 S.W.2d 219 (Tex.Civ.App.—San Antonio 1951, writ ref'd). We do not agree.

In *Copinjon*, there was an inference of fraud. In addition, it was conclusively established that the injury was not serious, and the treating doctor continuously advised the injured workman that there was nothing seriously wrong with him. The only evidence to the contrary was from a naturopath, who touched the claimant's back and said there was probably something wrong with it. The Court of Civil Appeals held that taking as true the statement of pain and suffering undergone by the claimant that the delay in filing his claim

did not meet the standard of ordinary prudence; that "this conclusively appears as a matter of law". The trial court's judgment rendered pursuant to an instructed verdict was affirmed.

In Hawkins v. Safety Casualty Company, 146 Tex. 381, 207 S.W.2d 370 (1948), the Court said:

"The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. . . ."

In the instant case, Hughes was treated for his injury during all of the fifteen months by an orthopedic surgeon, who told him that he was going to get better; he believed that his condition would improve. The claim was filed as soon as Hughes realized that he had in fact sustained disabling injuries. His foot was not amputated until October, 1967, which was four years and three months after he was injured and three years after he filed his claim. The payments by Aetna to Hughes for compensation and reimbursement for medical bills were made *after* Hughes filed his claim. Compensation benefits were paid to him until sometime in 1966. There is no indication of fraud or bad faith on the part of either the treating doctor or Hughes. It is apparent that Hughes believed what the doctor told him. We believe that the evidence raised a fact issue as to whether Hughes met the standard of ordinary prudence in delaying the filing of

his claim; the jury answered that issue favorably to Hughes; we cannot say as a matter of law that he lacked ordinary diligence in not filing his claim within the six month period of time. Accordingly, appellant's motion for rehearing is overruled.