## AMERICAN MOTORISTS INS. CO. v. BOORTZ.

### No. 13971.

United States Court of Appeals
Fifth Circuit.

June 27, 1952.

G. W. Parker, Jr., Ft. Worth, Tex., for appellant.

W. P. McLean, Jr., Ft. Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

In his suit brought under the Workmen's Compensation Act of Texas, Vernon's Ann. Civ.St. art. 8306 et seq., to set aside an award of the Industrial Accident Board, plaintiff alleged that, though the accident occurred on Nov. 23, 1949, and the claim for compensation was not filed until Jan. 25, 1951, he had good cause[1] up until he filed his claim for not filing it within the time provided by the Act.

The good cause alleged was that he was not informed by the defendant's doctors of the full extent of his injury and was misled by them up to the very time he filed his claim into believing that his injuries were not of a serious nature.

The defendant denied under oath that this was so, and, the cause proceeding to trial to a jury and the evidence all in, moved for an instructed verdict on the ground that the undisputed evidence showed as matter of law that the appellee did not have good cause up to January 25, 1951, for failing to file his claim.

This motion denied and one of defendant's requested charges on the good cause issue also denied, the cause was submitted to the jury and it returned a verdict finding: that appellee "had a reasonable excuse for his delay in filing his claim"; and that he was totally and permanently disabled, beginning December 20, 1950.

Defendant's motion, for a judgment notwithstanding the verdict, denied, judgment was entered on the verdict and the defendant appealed.

Here appellant presents, as its main ground for reversal, that the evidence established as matter of law that appellant did not have statutory good cause for not filing his claim with the Accident Board prior to January 25, 1951, and, as its subordinate one, the refusal of its requested charge number two on the "Good Cause" issue.

Not at all disagreeing with appellee's contention as to the controlling principles, indeed planting itself on the

---

1. The general principles governing the assertion and submission of the issue of good cause for late filing of a claim for injury are correctly stated at page 12 of Appellant's brief thus:

   "Under the provisions of Art. 8307, Sec. 4a, of the Revised Civil Statutes of Texas [Vernon's Ann.Civ.St. art. 8307, § 4a], no proceeding for compensation can be maintained unless a claim shall have been filed within six months after the injury; provided that for good cause strict compliance may be waived by the Industrial Accident Board or the court trying the case de novo. In Petroleum Cas. Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053, the Supreme Court of Texas held that the good cause must continue from the date of the injury to the date when the claim is actually filed. Other cases pre-

viously announcing the same rule are Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088 and Holloway v. Texas Indemnity Ins. Co., Tex.Com.App., 40 S.W.2d 75. It is recognized by this court in Indemnity Ins. Co. of America v. McManus, 88 F.2d 924 and many other cases.

   "The good cause contemplated by the statute means such a cause as would be considered a reasonable excuse for not filing the claim by a man of ordinary prudence who is reasonably mindful of his own interests. Ordinarily, the existence of good cause is a question of fact to be determined by the jury, but where the undisputed evidence reflects a state of facts about which the minds of reasonable men cannot differ, it is a question of law."

principles announced in the authoritative case of Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370,[2] appellant insists that under the undisputed facts in this case there was failure as matter of law to show good cause. We agree.

It will serve no useful purpose for us to marshall and cite here the almost numberless cases in which the courts, state and federal, have canvassed the question whether the evidence on the issue of good cause did or did not present a fact issue for the jury, because it is settled law that each case must be determined on its own facts. It will suffice to set out in the margin first the late cases on which appellant[3] seems to rely and next those in which appellee[4] places his greatest reliance.

All of these cases lay down the same principles of law and rules of decision. Their differences exist only in the facts to which the principles are applied. This is nowhere better or more correctly stated than in our case, Pacific Employers' Insurance Co. v. Oberlechner, 5 Cir., 161 F.2d 180, from which appellee quotes in his brief practically the whole decision:

"It has been thoroughly settled by decisions of the courts of Texas that the test as to whether or not an employee had shown good cause for his delay in filing a claim is whether or not he had prosecuted his claim for compensation with that degree of diligence that a reasonably prudent person would have exercised under the same or similar circumstances.

"Each case must be determined by its own facts and circumstances and since this is a case governed by State statutes and State decisions, it does not seem highly important for us to say more than that we think that the evidence in this case presented a question for the jury under the Texas decisions, and that the lower Court did not err in so submitting it."

Turning then to the undisputed facts, most of which are from the testimony of plaintiff himself, we find a history of pain and inability to get well, of visits innumerable to, and consultations innumerable with, doctors, with operations and fusion treatment advised, of the wearing of a plaster cast, of prolonged abstentions from work, being pulled off his route and just "sitting down at the plant", begun in September, 1950, when he first went to see Dr. Lipscomb,[5] who treated him until December 19th.

2. The court in that case, 207 S.W.2d at page 372, states the law as follows:
   "The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a *question of fact to be determined by the jury or the trier of facts*. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion (citing numerous Texas decisions.) * * *.
   "The law is well settled that a bona fide belief of a claimant that his injuries are not serious but trivial is sufficient to constitute good cause for delay in filing a claim. It also has been held a number of times that the advice of a physician, upon whom a claimant relies, that injuries are not of a serious nature, but are temporary or trivial, is sufficient to justify a claimant's delay until he learns, or by the use of reasonable diligence should have learned, that his injuries are serious. (Citing numerous Texas decisions.)"

3. Copinjon v. Aetna Cas. & Surety Co., Tex.Civ.App., 242 S.W.2d 219; and cases cited in it; Bennett v. Great American Indemnity Co., 5 Cir., 164 F.2d 386; Mayers v. Associated Indemnity Corp., 5 Cir., 108 F.2d 89; Sandage v. Traders & General Ins. Co., Tex.Civ.App., 140 S.W.2d 871.

4. Hawkins v. Safety Cas. Co., 146 Tex. 381, 207 S.W.2d 370; Pacific Employers' Ins. Co. v. Oberlechner, 5 Cir., 161 F.2d 180; Maryland Cas. Co. v. Perkins, Tex. Civ.App., 153 S.W.2d 647.

5. Of this visit plaintiff testified:
   " * * * * at first I went in there and he stripped me and gave me a toe test, and raked a pin across my stomach, and other tests, and he said, 'Otto, I will tell you something right now, you have some-

Finally, though, as plaintiff testified that he had, he found out on December 20, 1950, that his back was really injured,[6] he did not file his claim until January 25, more than a month later. Under these facts, it cannot with reason be claimed that there was an issue of fact on whether plaintiff had good cause.

We think that what was said by the Texas Court in the Copinjon case, supra [242 S.W.2d 220], applies with equal force here:

"It has been held that a good faith belief on the part of a claimant that his injuries were not serious may constitute 'good cause' for failing to present a claim within the statutory time. Such belief, however, must meet the primary test of ordinary prudence. Hawkins v. Safety Cas. Co., 146 Tex. 381, 207 S.W.2d 370.

"Taking as true his statements of pain and suffering undergone by him following the accident of August 5, 1946, appellant's action in delaying the filing of his claim until December 27, 1948, does not meet the standard of ordinary prudence. This conclusively appears as a matter of law. To hold otherwise would be to effectively nullify the statutory provision designed to secure the prompt filing of claims and prevent frauds ofttimes incident to the filing of stale demands. We cannot indulge the over-credulous at the risk of admitting the fraudulent, but must follow the public policy of the state as declared by legislative enactment. The court correctly instructed the jury to find for the appellee."

The district judge erred in denying defendant's motion for instructed verdict, and its motion made after verdict for judgment notwithstanding. The judgment is therefore reversed and the cause is remanded with directions to enter judgment for defendant.

Reversed and remanded with directions.

RUSSELL, Circuit Judge, dissents.

thing awful wrong with your back, but if I can find it or not is another question.'

"Q. Didn't Dr. Lipscomb tell you he thought you should have that operation on your back? A. No, sir, he didn't. He said, 'If the injection shots don't help', he said, 'Don't let nobody cut on your back unless you have to.' He said, 'If these injections don't help, then I would prefer a spinal fusion', or something like that."

6. "Q. Now, I want to repeat one thing. When was the first time that you actually learned the injury you alleged you had? A. Well, December 20th, that I really knew that I was really suffering from an injury, wasn't no strained muscles or arthritis."