C. O. DODSON, Appellant,

v.

The TRAVELERS INSURANCE COMPANY, Appellee.

No. 6479.

Court of Civil Appeals of Texas.

Amarillo.

March 14, 1955.

Rehearing Denied April 11, 1955.

Merchant & Fitzjarrald, Amarillo, for appellant.

Adkins, Folley, McConnell & Hankins, Amarillo, for appellee.

NORTHCUTT, Justice.

This is a workmen's compensation case in which appellant, C. O. Dodson, was the employee, Proctor & Gamble the employer, and The Travelers Insurance Company the insurer and appellee here. Appellant sued for injuries allegedly occurring on November 4, 1952 and filed his claim with the Industrial Accident Board on August 13, 1953 which was approximately nine months and nine or ten days after the date of the accident.

Appellant pleaded as his "good cause" for not filing his claim for compensation with the Industrial Accident Board within six months from the date of the accident, that he was advised by the company doctors that his injuries were of a very trivial nature and that his pain was not caused by such injury and that he did not learn of his true condition and the cause of the same until August 12, 1953, when he immediately contacted his lawyer and filed his complaint for compensation on August 13, 1953.

The case was tried to a jury. After appellant (plaintiff in the trial court) had introduced his testimony and rested his case, appellee made a motion for an instructed verdict because the undisputed record in the case showed the appellant did not file his claim for compensation within six months from the date of the injuries as required by Article 8307, Section 4a, Texas Civil Statutes and had shown no "good cause" for the failure to file such claim and notice. The trial court sustained such motion and found and concluded, as a matter of law, that the appellant had not shown "good cause" for his failure to file his claim for compensation within six months as required by Section 4a of Article 8307, Texas Civil Statutes and decreed that the plaintiff (appellant here) take nothing from which judgment the appellant perfected his appeal to this court.

Appellant based his appeal upon one point of error which is as follows:

"Plaintiff presented ample evidence to raise the jury issue of whether or not good cause existed for waiving the requirement that a claim for compensation for injuries must be presented to the Industrial Accident Board within six months from the date of the injury for which compensation is sought, and, for that reason, the Court erred in instructing a verdict for defendant."

It is well settled in this state that the timely filing of a claim for compensation with the Industrial Accident Board is jurisdictional unless, for good cause in meritorious cases, such filing has been waived under Article 8307, Section 4a, of the Revised Statutes, Vernon's Ann.Civ.St. The Supreme Court in Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370, 372, stated the rule in such cases as follows:

"The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined

against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. Martin v. Travelers Ins. Co., Tex.Civ.App., 196 S.W.2d 544; Great American Indem. Co. v. Beaupre, Tex.Civ.App., 191 S.W. 2d 883; LaCour v. Continental Casualty Co., Tex.Civ.App., 163 S.W.2d 676; Texas Indemnity Ins. Co. v. Cook, Tex. Civ.App., 87 S.W.2d 830, writ refused."

Under this rule, to determine whether appellant has shown good cause or not, we must look to his testimony and see whether or not there could have been any other reasonable conclusion left in this case than that appellant did not show good cause as found by the trial court.

■ In considering the question of good cause, we are of the opinion that it is only necessary in this case to take the testimony of the appellant. Appellant testified that after he was injured in November, 1952, that in December he requested leave of absence but such leave of absence was refused and appellant testified:

"They gave me a choice of coming on back to the job with my back in the condition it was in, or resigning, so I resigned, because they did not grant a leave of absence which I asked for".

On direct examination, appellant answered the questions asked him as follows:

"Q. What was the condition of your back from the date you terminated out there, until you actually filed your claim for compensation? A. Well, for several days after I terminated, my back was in very serious condition and gave me a lot of trouble. I couldn't sleep. I could hardly get around sometimes. I would have to be very careful in walking, be sure that I stepped straight, or didn't step off a curb too freely, but riding around in a car my back seemed to ease off, and as time went on it seemed to get better, except for if I rode a lot during the day. And, at night I would have pain; I would have trouble sleeping, because I would have to change positions so often in order to keep my back from hurting.

"Q. Did your back hurt all of the time, or was it by spells? A. Just by spells.

"Q. Did these spells become farther apart? A. Yes, sir.

"Q. Did they become less severe? A. Yes, sir.

"Q. Then, when did your back become more severe after that? A. On August 12, 1953.

"Q. What happened then? A. I stooped over—I was at home, and I stooped over to put a cigarette in a ash tray, and when I did that it hit me again. I mean the pain shot to my back, the same location, and I didn't straighten up for several minutes, and had to get hold of something to straighten up, to help me get straightened out. For the next three weeks, I really suffered plenty of pain.

"Q. And, following the attack on the 12th, then when did you consult me with reference to filing the claim? A. On August 13th.

"Q. Was that the next day? A. The next day.

"Q. Why hadn't you filed a claim with The Industrial Accident Board until that date? A. The reason for that was that the two doctors—Dr. Claybourn and Dr. Sadler after examining me stated that I had a slight sprain possibly, but it was nothing to worry about, and that it would gradually get better. Taking those men at their word, I just presumed that it would get better. It seemed to get better for awhile, except for those periods of pain and spells that I would have dizziness, and that is the reason. I hadn't even given any thought to suing the company. I wanted to be fair about it. That is the reason I didn't file the claim any sooner, because I took those men at their word that there was

nothing wrong with my back, and it would get all right. But, it so happens that they didn't know what they were talking about.

"Q. You didn't have any reason to suspect that either one of these men, these doctors, wasn't telling you the truth? A. No, sir. I didn't know at the time that Dr. Sadler was a Company Doctor or an Insurance Doctor.

"Q. What condition are you in now? A. A very weak condition, due to the fact that my back is in trouble all the time."

On cross-examination, the appellant testified as follows:

"Q. Did you tell Mr. Kaufman that you had hurt your back at that time? A. When I raised up, I told him he would have to get someone else to help him finish, that I had hurt my back and couldn't go any further.

"Q. Be sure about this. Did you tell him that your back was bothering you, or did you tell him you had hurt your back when you dropped that crate? A. I told him I hurt my back.

"Q. You knew you had hurt it when you dropped it? A. Yes, sir.

"Q. Did you go ahead and finish out that days work? A. I went back to my bench and finished out the days work, that's right.

"Q. When you got through with that days work, was your back still hurting you? A. Oh, boy! Sure was. I couldn't hardly change clothes.

"Q. You said sweat broke out on your face? A. That's right.

"Q. Did you tell anybody there in the Shop that afternoon you had hurt it? A. No."

"Q. Don't you remember that you said about a week later you went back to see the doctor for the fourth time? A. Do I remember saying that?

"Q. Yes, sir. A. No, sir. I don't remember saying it.

"Q. Did you go back to see him the fourth time? A. I guess I did.

"Q. In fact, you detailed in the deposition, when you were testifying there, that you went to see Dr. Claybourn six times, didn't you? A. Six times? I said six times approximately, I imagine.

"Q. There wasn't on any of those occasions that Dr. Claybourn purported to tell you that your back was well or worse, or anything else, did he? A. No.

"Q. He didn't make any representation to you concerning that, did he? A. No, sir."

This testimony is directly contrary to the contention made by appellant in establishing good cause for his failure to file his claim within six months. He further testified that from December 23, 1952 until August 13, 1953, he could not sleep and would wake up with his back hurting and would have to change positions to go back to sleep and that was true nearly all the time and that he had numbness in his legs nearly all that time and the loss of sleep continued. Under the testimony of appellant, we cannot believe that he acted with ordinary prudence and prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Our statute contains a six months time limitation in which to file the claim with the Industrial Accident Board—unless the party can show "good cause" for his failure to file his claim within that specified time. The best that we can claim for appellant under this record, according to his own contentions is that he was hurt, that it continued all the time and that he thought he would be all right. The record in this case is very similar to the case of Driver v. Texas Employers Ins. Co., Tex.Civ.App., 266 S.W.2d 401, in which a writ of error was refused N.R.E.

Judgment of the trial court is affirmed.