**O. T. WEDEL, Appellant,**

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,**
Appellee.

**No. 16059.**

United States Court of Appeals
Fifth Circuit.
Jan. 4, 1957.

Harold D. Putman, San Antonio, Tex., Putman & Putman, San Antonio, Tex., for appellant.

John H. Wood, Jr., San Antonio, Tex., Birkhead, Beckmann, Stanard, Vance & Wood, San Antonio, Tex., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging that in December of 1953, he had suffered personal injuries, that on January 18, 1955, he had filed his claim for compensation with the Industrial Accident Board, and that good cause existed for the delay in filing his claim, plaintiff brought this suit under the Texas Workmen's Compensation Act, claiming total permanent incapacity.

The defendant denied plaintiff's claim that he was entitled to recover and that his delay in filing was excused for good cause, and, affirmatively pleading that there was no good cause for the late filing, it took plaintiff's oral deposition in support of its denial and plea.

Based upon this deposition, defendant moved for summary judgment on the ground that plaintiff's testimony showed conclusively and as matter of law that good cause did not exist, and plaintiff presenting neither testimony nor affidavit in contradiction of the matters testified to by him therein, the district judge sustained the motion and granted judgment accordingly.

Urging one ground of error, that, though the facts were undisputed, whether there was or was not good cause presented an issue of fact and not a question of law, plaintiff is here urging that the judgment was wrong and must be reversed. We do not think so.

1. Appellant was injured about the middle of December, 1953. While he was tightening cable clamps on a generator lashing, he twisted his knee. This caused the whole leg and muscles to stiffen the second day. The third day he was limping and turned his foot, at which time the knee caught and he fell. He had pain, stiffness and numbness in the leg which he reported to his foreman.

The third day he was taken to see Dr. Lloyd E. Berry. The leg was wrapped and X-rays taken. Upon returning the next day Dr. Berry wrapped the leg again and told him the X-rays did not show anything.

He saw Dr. Berry four times. On the fourth occasion Dr. Berry told him that it wasn't bad; it was just a sprain and there was nothing more he could do about it, that it would have to wear off.

In answer to the question, "How long after your fourth visit to Dr. Berry did it take for you to feel better?", he answered, "Well, after I went back the fourth visit I was feeling pretty good except that it was pretty stiff. Then after he told me it wasn't much and it was just a little sprain and would wear off, it got to feeling pretty good and I let it ride like that."

Asked, "How long did it take for it to get to feeling all right?", he answered, "Well, it never has felt like this one did except it never did pain me all the time until December of the next year, and we had a cold spell there, and it went all through this knee and felt like it went all over again.

Asked if he had any trouble with the leg in pain from January, 1954 until July 14, 1954, about six and one-half months, he answered, "Whenever I was climbing, it would hurt. Any time whenever I would sit on that knee or happen to get it in the right position, then it would get in one of those binds." He, however, has never missed any work or wages as the result of the injury.

He testified that he did not go back to the doctor or any other doctor because he just kept waiting for it to wear off; that during that period of time the knee would catch and give him trouble several times, fifteen times anyway. "It would catch with me on the job, and I made a

As the appellant well states in his brief, "there is little or no dispute about the evidence as developed at the time the motion for summary judgment was heard. It is all contained in the deposition of the appellant. The whole dispute is over the legal effect of this evidence,[1] upon wheth-

remark several times to Mr. Keeney about it."

From the two weeks before Christmas, on Dec. 25, 1953, until he went to see the doctor in February of 1955, he never went to see a doctor about his leg. After his knee got to hurting him in December, 1954, he did nothing about it until January 17, 1955, when, because the knee wasn't getting any better he hired a lawyer and later in March, 1955, Dr. Haley examined the leg and told him there was a torn ligament and the knee would be like that the rest of his life.

Regarding his deciding to hire a lawyer and filing claim, the following questions were asked and answered by appellant:

Q: "Well, what made you decide to consult a lawyer on Jan. 17, 1955?" A: "Well, when that knee wasn't getting any better, in fact, when I had that trouble in December again, when it started aching me, my whole leg up into my hip back here."

Q: "Your left hip?" A: "Yes, my left hip. That doctor told me it was going to have to wear off, by golly, I thought—"

Q: "Well, the doctor told you that a year before, though, didn't he?" A: "Well, yes."

Q: "About when did you have that pain occur, about what day was it, or what period of the month of December, 1954, when this pain struck you in that leg and hip?" A: "Oh, let's see."

Q: "Was it the first part of December, 1954?" A: "No, it was about the middle of the month."

Q: "In other words, about the 15th of December, 1954, during a cold spell—" A: "Yes."

Q: "—this pain started in your left leg and hip, and it was at that time that you decided that you would see a lawyer about this condition in your hip, is that right, and your leg and knee?" A: "Yes."

Q: "And then you saw Mr. Putman on Jan. 17, 1955, about a month and two days later, is that right?" A: "Yes."

Q: "Why did you wait that length of time before coming to employ Mr. Putman?" A: "Well, in fact, I don't know. I just went on with it, and finally I just decided to come to see Mr. Putman."

er, under the principles established by the Texas decision, it presented an issue of fact for the jury or a question of law for the court upon whether there was good cause.

As appellant correctly states in his brief:

"The controlling statute on this question is Article 8307, Section 4a, Revised Civil Statutes of Texas which provides that no proceeding for compensation can be maintained unless a claim shall have been filed within six months after the injury; provided that for good cause strict compliance may be waived by the Industrial Accident Board or the court trying the case de novo.

"It is admitted that the good cause must continue from the date of the injury to the date when the claim is actually filed.

"Two of the most recent cases before this court on this question are Pacific Employers' Ins. Co. v. Oberlechner, [5 Cir.] 161 F.2d 180 and American Motorists Ins. Co. v. Boortz, [5 Cir.] 197 F.2d 900. Both of these cases clearly stand for these two things: One, that the test as to whether or not good cause exists is whether or not the claimant has prosecuted his claim with that degree of diligence that a reasonably prudent person would have exercised under the same or similar circumstances; and, Two, that as to whether

good cause did or did not exist, each case must be determined on its own facts."

Not at all disagreeing with appellant's contention as to the controlling principles, indeed planting itself on those announced in the Boortz case, supra, and in the authoritative case of Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370, appellee insists correctly, we think, that, under the undisputed facts in this case, there was failure as a matter of law to show good cause.

In addition to these cases, appellee cites in support of these principles, Copinjon v. Aetna Cas. & Sur. Co., Tex.Civ.App., 242 S.W.2d 219, Driver v. Texas Employers Ins. Co., Tex.Civ.App., 266 S.W.2d 401; Dodson v. Travelers Ins. Co., Tex. Civ.App., 278 S.W.2d 242; Phariss v. Texas Employers Ins. Ass'n, Tex.Civ. App., 290 S.W.2d 289; and Consolidated Cas. Ins. Co. v. Perkins, 154 Tex. 424, 279 S.W.2d 299.

These principles as they and all the other Texas cases dealing with the question state them may be thus briefly summarized:

(1) A claim may be filed at any time within the statutory period of six months.

(2) When it is not filed within that period, good cause must be shown for not filing it, and this good cause must continue to the date when it is actually filed.

(3) The term "good cause" for not filing is not defined in the statute but it

---

Q: "Why didn't you see a doctor when this condition developed, this condition of pain in your leg?" A: "Well, I figured it would just come on and go off."

Q: "How long did that pain in your leg and hip last after about Jan. [Dec.] 15, 1954?" A: "It lasted about right at two weeks."

Q: "In other words, until about the first of Jan., 1955?" A: "Yes."

Q: "Then did it get better like it was before?" A: "Yes, it got to feeling better, and then it would come back. It just varied between—seemed like the weather had something to do with it."

Q: "When this condition struck you on Jan. 15,—I beg your pardon—Decem-

ber 15, 1954, you decided to employ a lawyer?" A: "When was that?"

Q: "About the middle of Dec., 1954, when this cold snap hit, and you had this trouble, you decided at that time to employ a lawyer?" A: "Well, possible later."

Q: "About how much later?" A: "Oh, I had been thinking about it, I think, for about three weeks after I did."

Q: "Had you ever contemplated employing a lawyer before the middle of January, 1953—'54—I beg your pardon?" A: "Not before that, no."

The claim was filed with the Industrial Accident Board on Jan. 18, 1955, the day after Appellant had employed counsel.

has been uniformly held by the courts of Texas that the test for its existence is that of ordinary prudence, that is whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.

(4) Whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts.

(5) When, however, the evidence (here his own), taken as strongly as it may in law be taken in favor of the plaintiff, admits as matter of law of but one reasonable conclusion, which negatives good cause, the question of good cause vel non is one of law for the court and not of fact for the jury, and plaintiff should be denied recovery.

In the application of these principles, the Courts of Texas have without varying recognized that "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances" is ordinarily a question of fact to be determined by the jury or the trier of facts. With equal consistency and firmness, they have recognized that whether, as matter of law, the evidence does or does not make an issue for the jury is for the determination not of the jury but of the court.

■ Considering the case presented on this record in the light of these principles, it is, we think, quite plain that the claim of plaintiff, that good cause for not filing his claim existed up to the time that he did finally file it, is, as matter of law without substantial basis and that the district judge was right in entering judgment for the defendant. It is without substantial basis because, after permitting the statutory six months to expire without filing claim, he delayed, without taking action, for another six months though during that whole period he was aware of the fact that his injury had not healed.

■ It is further without substantial basis because, even if it be assumed that, as he claims, he did not realize the extent of his injuries until an entire year had passed after their receipt, he admits that after he fully realized their seriousness he waited for still another thirty days before filing his claim. Am. Motorists Ins. Co. v. Boortz, supra, 197 F.2d at page 902.

Appellant's continued insistence here upon his contention, that his evidence presented a jury issue on whether there was good cause, is based, we think, upon his inability or refusal to recognize that whether it did or not do so was a question of law to be determined by the court and not the jury and that the undisputed facts of this case require the court below to hold, as he did, that as matter of law the evidence taken in the light most favorable for plaintiff failed to meet the primary test of ordinary prudence, and, therefore, to present an issue of fact for the jury, and that a judgment for defendant was demanded.

The judgment is Affirmed.