**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Jack F. DILL, Appellee.**

**No. 16433.**

Court of Civil Appeals of Texas.

Fort Worth.

June 14, 1963.

Rehearing Denied July 12, 1963.

Nelson & Sherrod and Stan Carter, Wichita Falls, for appellant.

Kenneth C. Spell, Jr., Mock, Banner & McIntosh and C. Coit Mock, Wichita Falls, for appellee.

MASSEY, Chief Justice.

This is an appeal from a judgment in behalf of the claimant in a workmen's compensation case.

Judgment reversed and rendered.

It appears that the claimant, Jack F. Dill, plaintiff below, sustained an injury to his back in Wichita Falls, Texas, while in the employ of O'Rourke Construction Company on or about November 2, 1960, pursuant to certain lifting or straining in raising and placing in position an angle iron to be integrated into a building. Claimant was a carpenter at the time. The point of injury was to the lower back, near the spinal column, just above the hip. Pain was immediately experienced in the form of a "cold sensation", "as though you had laid a cold bolt or something up there". It was not immediately disabling, and after claimant straightened up and rubbed himself and talked about it to a co-employee he resumed working and completed the day's work. Claimant's back still hurt at close of the day. He returned to work the following day and worked though his back was sore. The next day he reported his injury to his superintendent, who filled out an ac-

cident report form and gave claimant permission to go to see a doctor. Throughout the record it is made clear that claimant was given permission to go to any physician of his choice and that he selected his own doctor. Claimant was given some sort of slip or certificate to deliver to the doctor so that he would be informed that it was a case under the Workmen's Compensation Act and not one in which he should expect payment from the claimant.

Claimant did not seek any particular doctor. He went to the Wichita Falls Clinic Hospital and saw a Dr. Parsons, the first doctor who became available. He was given a prescription (which he later had filled at a drug store) and was told to report back to the doctor in three weeks. He returned to the duties of his employment the following day, and continued to work three weeks, after which he reported back to see the doctor. His testimony was that although he was experiencing pain in his back during the intervening period he was able to efficiently perform his work. Upon calling at the Clinic Dr. Parsons was unavailable, and claimant was notified to call again in one week. Claimant further testified that since he could not see the doctor he decided to go to a chiropractor, and he did do so and underwent a course of some seven to ten treatments in the form of chiropractic adjustments. He did not report back to see Dr. Parsons.

Claimant continued to work until November 28, 1960. He stated that he was discharged from his employment on that date. His testimony was that he subsequently obtained chiropractic treatments from two other chiropractors, and also called upon a medical doctor who told him that he should see a "bone specialist". He did do so, but the record reflects that such was not done until the Spring of 1961, to-wit: on April 20, 1961, over five and one-half (5½) months after his injury, when he called upon Dr. Maxfield as a physician of his own choice. The record reflects that Dr. Maxfield does the majority of this kind of work for the defendant Texas Employers' Insurance Association in the Wichita Falls area.

Each time a chiropractor treated him claimant would obtain temporary relief from the pain in his back, but within a few days it would return. He was continuing to work the majority of time, dependent upon the availability of carpenter work, up until about the time he first saw Dr. Maxfield. Dr. Maxfield is a physician at the Wichita Falls Clinic Hospital, as was Dr. Parsons. Besides examination and treatment Dr. Maxfield gave claimant a prescription to have filled at a drug store. Neither the doctor nor the drug store ever charged claimant anything, and both then and thereafter the medical and drug bills were sent to the insurance company, which apparently paid all of them. Claimant paid the chiropractors. After April 20, 1961, and until July or August, 1961, claimant saw Dr. Maxfield about once in each two-week period. Certain medical records indicate that June 7 was the last time claimant saw Dr. Maxfield, although his testimony is that he continued to receive treatment from this doctor in July, August, September and October of 1961. Claimant testified that sometime in July Dr. Maxfield told him to "get off that carpenter work and get some lighter work." He further testified that after Dr. Maxfield told him this he did not do any further carpenter work. He tried to find lighter work, but did not have much luck. He further testified that he saw Dr. Maxfield on or about October 31, 1961 for the final time before filing his claim for compensation, at which time the doctor told him that he might as well get used to living with his condition because he would not get any better, and that he could not do any more carpenter work. Dr. Maxfield prescribed a back-brace which was secured from the drug store on this same date at the expense of defendant insurance company.

Claimant testified that up until the occasion on October 31, 1961, he still felt and hoped that he was going to get better. He described the pain he was having as a "dull throb" in his back, which pain ran down his

left leg into his foot where it was a dead, dull, warm feeling—"kind of a burning sensation". On cross-examination the claimant stated that the reason he did not file his claim for compensation until he did file it was because he did not think that he was seriously hurt, although there had been no time since the injury was sustained when he had been free of pain; that though the pain might slack off enough for him to go to sleep he had not had a full night's sleep since the injury. Despite the pain, he continued to think that his injury was trivial, "a pulled ligament or something like that", until Dr. Maxfield told him on October 31, 1961, that he was not going to get well. He thought he would get all right even after Dr. Maxfield told him not to do any further carpenter work in July of 1961. By his testimony claimant so limited the premise of his contention of "good cause" for delay in filing his claim.

Further testimony from the claimant was to the effect that between the time he was discharged by O'Rourke on November 28, 1960, and the time in July when Dr. Maxfield told him not to do carpenter work he was employed by Hugh Robertson as a carpenter, but had to quit because he could not do the work; worked for the Professional Construction Company, but quit because "the diggin' got just a little bit rougher than I could take"; worked for P. Kosh & Son, but quit because "I was having an awful time keeping up"; worked for Lawless and Alford, but quit because "It was just a little bit to peart for me; I couldn't keep up with them"; and worked for Nichols Construction Company putting up "colored transite siding", which task required "just man-handling it up and I couldn't do it".

Testimony from the wife of the claimant was that for a period of one year after the date of his injury he was trying to work and that he would work a day or two and "get to hurting so bad he would have to take off."

The claimant did not file his claim with the Industrial Accident Board until November 10, 1961, a little more than one full year from the date of injury. May 2, 1961, would have been six months after injury date.

Article 8307, § 4a, Vernon's Ann.Civ.St. Tex., requires that claims for compensation under the Workmen's Compensation Act be filed within six months "after the occurrence of the injury", provided that, "For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board." Judicial decisions establish the requisite that "good cause" must exist thereafter up until the time claims are actually filed.

In so far as they are relevant and material to the issue the claimant's pleaded grounds of "good cause" for failure to file his claim within the statutory period, and until the time he did file the same, were that "although being treated by doctors at intervals (he) believed that his injury was not a serious one, and that he would be able to keep on at his regular employment without any disability, and did not discover that his injury was so serious until just before the claim was filed", and because "All medical bills incurred with Dr. Jack Maxfield had been paid by the Defendant up until this claim was filed, and the Plaintiff knew that these bills were being paid even though the six months had run out from the date of his injury." In the submission of the case to the jury the question was posed thus: "Do you find from a preponderance of the evidence that Jack Dill acted as a reasonable, prudent person in delaying the filing of his claim until November 10, 1961?" The jury's answer was, "He did."

An argument appears in claimant's brief to the effect that even though "good cause" for delay in filing a claim might otherwise not exist, continued payment by the insurance company of medical and drug bills

incurred on account of an injury would constitute "good cause" for such delay. The case of Derr v. Argonaut Underwriters Insurance Company, 1960 (Tex. Civ.App., Austin), 339 S.W.2d 718, writ ref., n. r. e., is cited as authority. Testimony of the claimant failed to advance the fact of such payments as an occasion for the delay in filing claim. Indeed, his own testimony limited the reasons for delay to other circumstances.

It has been held that a good faith belief on the part of a claimant that his injuries were not serious may constitute "good cause" for failing to present a claim within the statutory time. Such belief, however, must meet the primary test of ordinary prudence. Hawkins v. Safety Casualty Co., 1948, 146 Tex. 381, 207 S.W.2d 370.

Taking as true the statements of the claimant concerning the pain and suffering undergone following the accident of November 2, 1960, together with his testimony concerning his subsequent inability to perform work for five different employers after the time of his discharge by O'Rourke Construction Company, we believe that claimant's action in delaying the filing of his claim beyond the six months period ending May 2, 1961, or at least beyond that time in July of 1961 when Dr. Maxfield told him to quit trying to do carpenter work, does not meet the standard of ordinary prudence. Neither does the further delay in filing the claim from July of 1961 to November 10, 1961 meet the standard. This conclusively appears as a matter of law. There were no attempts between the parties to make a settlement prior to November of 1961, and the claimant never became acquainted with any representative of the insurance company until about one week before his claim was filed.

To hold that claimant proved ordinary prudence despite the delay would be to effectively nullify the statutory provisions designed to secure the prompt filing of claims and prevent frauds ofttimes incident to the filing of stale demands. We cannot indulge the over-credulous at the risk of admitting the fraudulent, but must follow the public policy of the state as declared by legislative enactment. The trial court should have instructed the jury to find for the defendant insurance company, or, failing this, should have rendered judgment *non obstante veredicto*. Copinjon v. Aetna Casualty & Surety Co., 1951 (Tex. Civ.App., San Antonio), 242 S.W.2d 219, error refused, and authorities therein cited.

In the event it be held that we err in the above holding, we would reverse and remand the judgment of the lower court because the verdict and judgment were contrary to the great weight and preponderance of the whole of the evidence on the matter of good cause for delay in filing claim. Under the state of the record made below we overrule all other points of error presented on appeal.

Judgment is reversed and rendered that claimant take nothing.