**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Petitioner,**

v.

**Lee Roy HUBBARD, Respondent.**

**No. B–4566.**

Supreme Court of Texas.

Sept. 24, 1974.
Rehearing Denied Oct. 23, 1974.

Burford, Ryburn & Ford, James H. Holmes, III, and J. Dan Bohannan, Dallas, for petitioner.

Parish & Nix, Harold W. Nix, and William R. Porter, Daingerfield, for respondent.

SAM D. JOHNSON, Justice.

The single issue to be resolved in the instant case is whether or not there was good cause for the late filing of an industrial accident claim.

Plaintiff Lee Roy Hubbard suffered an injury to his back on May 12, 1970 while in the employ of Lone Star Steel Company. Hubbard's claim for workmen's compensation was not filed until August 30, 1971, some fifteen months after his accident.[1] The Industrial Accident Board denied Hubbard's claim and he appealed. In the trial court the Insurance Carrier filed a motion for summary judgment which was sustained. The court of civil appeals reversed and remanded, finding an issue of fact on good cause for late filing. 510 S.W.2d 649. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The injury giving rise to this lawsuit occurred as Hubbard was lifting hundred-pound sacks of material called "jet patch." While lifting one of these sacks he felt something in his back "pop" and he felt immediate and severe pain. Hubbard testified in his deposition that the pain was such that he "could hardly make the shift," and when he arrived home that evening he had to be helped from the cab of his truck. Hubbard remained in bed for several days before returning to work and when he did return he requested a less strenuous job. After a month Hubbard left Lone Star Steel because he was unable to do the work due to his back condition. Hubbard worked briefly at several subsequent jobs, leaving each because his back condition prevented him from doing the work. In his deposition Hubbard testified that he had suffered from severe pain continuously since his accident and had been unable to do the type of heavy work he did prior to injuring his back at Lone Star Steel.

Hubbard stated unequivocally in his deposition that he felt his back condition had resulted from the injury he received at Lone Star Steel. His excuse for late filing, despite the seriousness of his condition, derives from a medical opinion given Hubbard by a Dr. Jackson. Dr. Jackson was not connected with Lone Star Steel; he was Hubbard's personal doctor. Hubbard went to Dr. Jackson immediately after the accident and made several additional visits over the next six months. The first time Dr. Jackson saw Hubbard the doctor told him that he had suffered a back sprain and, in addition, there was a narrowing of the L/5/S1 interspace in his spinal column. Dr. Jackson advised Hubbard that he was unable to say whether the spinal compression (the narrowing of the L/5/S1 interspace) was the result of his injury at Lone Star Steel because there were no x-rays of Hubbard's back predating the injury. Hubbard testified that he saw several other doctors after leaving the care of Dr. Jackson, none of whom ever told him that they could connect the spinal compression to the injury he received at Lone Star Steel.

---

[1]. The statutory deadline for filing is within six months after the occurrence of the injury unless the employee shows good cause for a delay. Art. 8307, Sec. 4a, Vernon's Ann.Civ. Stat.

Hubbard relies on two reasons to establish good cause for his delay in filing a claim with the Industrial Accident Board: a belief that his injuries were trivial, and reliance on Dr. Jackson's opinion that the spinal compression could not be traced to the injury at Lone Star Steel. It is Hubbard's contention that he knew he had a back sprain but that he thought it was trivial; that he thought the spinal compression (and not the sprain) was the cause of his disabling condition. He argues further that the fact he suffered serious pain, loss of work and disability is irrelevant since he had no way of connecting this pain, loss of work and disability to the occurrence at Lone Star Steel.

Although Hubbard himself thought that the injury at Lone Star Steel had caused his disability, he argues that this belief was not the equivalent of knowledge of the fact requiring him to file a claim since Dr. Jackson had rendered a medical opinion that the spinal compression could not be traced to the injury on the job. Hubbard relies on Liberty Mutual Insurance Company v. Wilson, 495 S.W.2d 579 (Tex.Civ. App.—Texarkana 1973, writ ref'd n. r. e.), in which the court said:

"The proof is overwhelming, and the fact is conceded, that Mrs. Wilson had knowledge of her injury at all pertinent times, along with the realization that her physicial [sic] condition and incapacity followed immediately in the injury's train, and that she believed the injury caused it. But there is no like evidence or concession that she knew that in medical probability her incapacity was produced by her injury, or that she was not diligent in trying to ascertain the consequence of her injury or lacked diligence in making a claim once she had medical support for belief. An instinctive and uninformed belief is not the equivalent of knowledge of a fact. It would be unrealistic to construe the Workmen's Compensation Law as requiring an injured employee to completely discard and disregard the assertions of experienced

claims people and the medical opinions of the best qualified medical professionals available, and contrary to such advice act upon an instinctive and uninformed belief about the cause producing incapacity." 495 S.W.2d 579 at 580–581.

In *Wilson* three doctors, two of whom were employer related, all told the employee her condition was not job related. When the independent physician changed his mind, the employee filed a claim immediately. The clearly marked distinction between *Wilson* and the instant case is an affirmative medical opinion that a condition or disability *is not* job connected in one instance and the inability of the doctor in the other to say with reasonable medical probability that the condition or disability *is* job related. *See* Travelers Insurance Company v. Rowan, 499 S.W.2d 338 (Tex. Civ.App.—Tyler 1973, writ ref'd n.r.e.).

There is no allegation that Dr. Jackson, or any other doctor, told Hubbard his condition was not serious. *See* Texas Employers Insurance Association v. Sapien, 458 S.W.2d 203 (Tex.Civ.App.—El Paso 1970, writ ref'd n. r. e.); Texas Employers' Insurance Association v. Brown, 309 S.W.2d 295 (Tex.Civ.App.—Waco 1958, writ ref'd n. r. e.). Hubbard concedes and indeed contends that his total disability is serious, but says he believed the sprain, as opposed to the spinal compression, was not serious enough to justify filing a claim. As to the spinal compression, Hubbard asks this court to hold that an injured employee may rely on his doctor's inability to say with reasonable medical probability that his condition is job related.

We cannot accept Hubbard's argument. Under the facts of this case we hold that Hubbard understood his disability to be such that a reasonably prudent person under the same or similar circumstances would have filed a claim within the statutory time period. Texas Employers' Ins. Ass'n v. Portley, 153 Tex. 62, 263 S.W.2d 247 (1953). Prior to the occurrence at Lone Star Steel, Hubbard had no back problems. Since the occurrence he has

suffered from severe and continuing pain. *See* Copinjon v. Aetna Casualty & Surety Co., 242 S.W.2d 219 (Tex.Civ.App.—San Antonio 1951, writ ref'd). He has been unable to perform the type of heavy work he did before injuring his back. *See* Texas Employers' Insurance Association v. Dill, 369 S.W.2d 464 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n. r. e.). Hubbard knew that he had a back sprain and he does not claim that any doctor ever told him the sprain was not serious. *See* Teague v. Texas Employers' Insurance Association, 368 S.W.2d 643 (Tex.Civ.App.—Austin 1963, writ ref'd n. r. e.). Hubbard also knew he had a spinal compression and although Dr. Jackson asserted that he could not link it to the occurrence at Lone Star Steel due to the absence of prior x-rays, Hubbard himself believed his back condition derived from his injury on the job.

Under the facts of this case the trial court correctly granted the Insurance Carrier's motion for summary judgment. The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.